Hannum, Appellant, *v.* Oak Lane Shopping Center, Inc.

Argued November 23, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Cassin W. Craig,* with him *Morris Gerber* and *Wisler, Pearlstine, Talone & Gerber,* for appellants.

*Bernard G. Segal,* with him *Josephine H. Klein, Jerome J. Shestack* and *Schnader, Harrison, Segal & Lewis,* for Penn Fruit Company, appellee.

*Desmond J. McTighe,* with him *Walter B. Gibbons* and *Duffy, McTighe & McElhone,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 4, 1956:

This is an appeal from the refusal of the court below to declare a "supermarket" in a predominantly residential neighborhood a nuisance per se.

On a tract of land comprising a block bounded by Cheltenham Avenue, Brief Road, Dewey Road and Front Street, Oak Lane Manor, Cheltenham Township, Montgomery County, the defendant Oak Lane Shopping Center, Inc., proposes to erect[1] a large market building with provision for a two-hundred-fifty-car parking lot for patrons of the supermarket and other stores which are also to be built on the tract. The supermarket will be operated by the defendant Penn Fruit Company, under a 25 year lease from the Oak Lane Shopping Center. Plaintiffs, who object to the establishment of the supermarket on that location, are owners and residents of homes on Dewey Road, except that one of

---

[1] At the oral argument before this court it was stated that the erection of the building had already been consummated but we will assume the facts to be as they appear in the briefs of counsel.

them resides and has an office at the corner of Cheltenham Avenue and Brief Road.

The building to be erected will be a one-story structure about 28 feet in height, 176 feet long and 113 feet wide. Plaintiffs' objections are directed to certain features of the project which they claim will depreciate the value of their properties and injuriously affect their living conditions. They complain that on the corner of Cheltenham Avenue and Front Street there is to be a neon sign of a width of 15 feet and towering 72 feet above the ground. That the parking lot on the outside of the market will be lighted from a number of aerial standards placed around the perimeter of the tract. That the glare from these spotlights and from the neon sign will be most offensive. That the operation of large trucks in and out of the market will be carried on between 6 A.M. and 2 P.M., and during the summertime fresh produce will be delivered as early as 4 A.M. That the proximity of loading platforms to the houses on the north side of Dewey Road will make it difficult adequately to screen them from the view of the occupants of those residences. That there will be a probable use of the parking lot by some 2,000 cars daily. And finally, in general, that a modern supermarket of the size here contemplated, conducting nighttime business, brilliantly illuminated with neon signs and powerful lights, with large facilities for the parking of motor vehicles and the unloading of trucks, will inevitably generate such noise, disturbance, traffic congestion, and assemblage of people, as is bound to be detrimental to the lives and comfort of the occupants of the neighboring dwelling houses. For these various reasons they urge that the project should be adjudged a nuisance per se in the neighborhood in question.

Defendants assert that these apprehensions of the plaintiffs are all unjustified. They state that the building will be a neighborhood or community supermarket as distinguished from a regional shopping center; that is to say, that its customers will come from the immediate neighborhood and not from more distant points. That the market will not be open evenings except Thursdays until 9 P.M. and Fridays until 10 P.M. That the lights mounted on standards on the parking lot and the outside of the market will be controlled by reflectors which will channel the beams inward, so that the glare will not affect any nearby residences. That none of the entrances to the market will be on Dewey Road where all but one of the plaintiffs reside. That both the building and the parking lot will be screened from Brief Road and Dewey Road by the planting of evergreen trees and the erection of a cedar fence. That Cheltenham Avenue is such a heavily trafficked main highway that any addition to the traffic resulting from the operation of the supermarket will be entirely negligible. That only 6 trucks will arrive at the supermarket in a twenty-four hour period. That garbage and trash will be internally handled and controlled in a tile room, and rubbish will be hauled away each day in an enclosed truck. Defendants contend that the court below was correct in holding that the neighborhood was predominantly but not exclusively residential since the entire tract of 8 acres on a portion of which the supermarket is to be erected and extending more than two blocks along Cheltenham Avenue, has been zoned for commercial use since 1941, there are no residences on that tract, the shopping center to be constructed thereon will include at least six stores adjoining the Penn Fruit supermarket, and the vacant adjoining lot has room for approximately 30 additional stores. (Incidentally, plaintiffs have not

voiced any objection to the individual stores or to the parking area for 90 cars in connection therewith.) Defendants point out that all the plaintiffs bought their properties with knowledge that the tract was zoned as commercial, which would have permitted constructions and operations thereon possibly more objectionable than any that will result from the enterprise to which their present complaints are directed.

If the fears of plaintiffs should prove justified by the operation of the supermarket and the parking lot turning out to be a nuisance in fact, they will not be denied their day in court to vindicate whatever rights to which such a situation might then give rise. But the court below was right in holding that neither a supermarket nor a parking lot constitutes a nuisance per se, even if located in a residential neighborhood. This was definitely ruled in *Essick v. Shillam*, 347 Pa. 373, 32 A. 2d 416, and although the size of the supermarket and parking lot involved in that case may not have been as large as those here proposed the difference is one merely of degree and not of kind. In that case Mr. Justice ALLEN M. STEARNE stated as the question to be decided (p. 375, A. p. 417): "Will the construction of a supermarket, grocery and provision store, with a parking lot for its patrons in a predominantly residential district, constitute a nuisance as a matter of law, regardless of the manner of operation, where the proposed use does not violate building restrictions or zoning laws?" The question thus framed was answered in the negative, and the case has since been cited several times with approval.[2] It controls

---

[2] *Wojnar v. Yale & Towne Manufacturing Co., Inc.*, 348 Pa. 595, 597, 36 A. 2d 321, 322; *Crew v. Gallagher*, 358 Pa. 541, 546, 58 A. 2d 179, 182; *Molony v. Pounds*, 361 Pa. 498, 502, 64 A. 2d 802, 804; *Waschak v. Moffat*, 379 Pa. 441, 446, 109 A. 2d 310, 313.

the present controversy. It may be added that causes for annoyance frequently arise from the uses to which adjoining or neighboring properties are put, but in law they do not necessarily rise to the dignity, or the indignity, of enjoinable nuisances. Nor does the fact that a proposed use of land will depreciate the value of nearby properties constitute ground for equitable relief: *Young v. St. Martin's Church,* 361 Pa. 505, 509, 510, 64 A. 2d 814, 816.

The large grocery and provision markets or "supermarkets" have become an important feature of suburban life, indeed an almost integral part of every suburban community ever since the exodus to the suburbs that took place following the advent of the automobile; they have replaced, whether for good or evil, the former pattern of small stores dispersed throughout the neighborhood. To hold that such supermarkets in a residential neighborhood are nuisances per se, no matter how carefully and properly they may be operated, would be to deny to residents of such communities the advantages in convenience of shopping that housewives obviously find in them.

Decree affirmed at the cost of appellants.