## Bidwell, et al. v. Zoning Board of Adjustment and Chatham College and City of Pittsburgh, Additional Parties.

328

Argued October 21, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS. Judge MANDERINO did not participate in the decision.

*Paul H. Titus,* with him *Kaufman & Kaufman,* for appellants.

*John R. Valaw,* Assistant Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for City of Pittsburgh.

*H. Woodruff Turner,* with him *John G. Frazer, Jr.,* and *Kirkpatrick, Lockhart, Johnson & Hutchinson,* for Chatham College.

OPINION BY JUDGE CRUMLISH, JR., January 24, 1972:

This is an appeal from a decision and order of the Court of Common Pleas of Allegheny County dismissing the appeal of Bidwell, et al., appellants, from a decision of the Zoning Board (Board) of Adjustment of Pittsburgh. The Board had affirmed the decision of the Zoning Administrator to issue occupancy and building permits to intervening appellee, Chatham College.

This appeal attacks the validity of two Zoning Ordinances of the City of Pittsburgh.

The tract in question consists of approximately thirteen to sixteen lots fronting on Murray Hill Avenue in Pittsburgh and contiguous, in the rear, to the Chatham College Campus. The campus has at all time relevant to the instant action been located in a tract zoned "R-3" Multiple Family Resident District. Prior to the actions involved in this case, the tract in question was zoned "R-1" Single Family Residence District. In 1968, Chatham College filed a petition with the City Planning Commission to change the zoning classification of the 13-16-lot tract from "R-1" to "R-3" in order to construct a library and lecture hall along with appropriate off-street parking facilities.

After public hearings were held, the City Council amended the Zoning District Map and changed the zoning of the lots from "R-1" to "R-3".[1] Chatham College subsequently applied for a conditional use permit pursuant to the zoning amendment. Following public hearings this application was also approved by ordinance of the City Council.[2]

An appeal challenging the validity of the zoning change was dismissed by the Zoning Board of Adjustment and this decision was affirmed by the Court of Common Pleas, which took no additional testimony.

Appellants contend that by rezoning these premises from "R-1" to "R-3" this particular tract is the object of special treatment without justification and therefore the reclassification is invalid as spot zoning. Appellants further contend that the application for the conditional use was made under the wrong provisions of the Zoning Ordinance of the City of Pittsburgh; and that the

---

[1] Ordinance No. 700, December 31, 1969.
[2] Ordinance No. 701, December 31, 1969.

Board of Adjustment abused its discretion in refusing to pass on the validity of the zoning ordinances. We are of the opinion that these contentions are without merit and hold that the decision and order of the lower court should be affirmed.

Since the lower court took no additional testimony the scope of our review is limited to whether the Zoning Board clearly abused its discretion or committed an error of law. *Marple Township Appeal,* 440 Pa. 508, 269 A. 2d 699 (1971) ; *Coleman v. Zoning Board of Adjustment,* 413 Pa. 103, 196 A. 2d 323 (1964) ; *Rubin v. Zoning Board of Adjustment,* 1 Pa. Commonwealth Ct. 406, 274 A. 2d 208 (1971).

It is undisputed that a zoning ordinance is presumed to be valid and constitutional and that the burden of proving otherwise is upon the person challenging the ordinance. *Cleaver v. Bd. of Adj.,* 414 Pa. 367, 200 A. 2d 408 (1964) ; *DiSanto v. Zoning Bd. of Adj.,* 410 Pa. 331, 189 A. 2d 135 (1963). Before a zoning ordinance can be declared unconstitutional, the challenging party must prove that its provisions are *clearly* "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of the legislation is fairly debatable, the legislative judgment must be allowed to control. Village of Euclid v. Ambler Realty Co., 272 U.S. 365." *Glorioso Appeal,* 413 Pa. 194, 198 (1964) 196 A. 2d 668. *St. Vladimir's Ukrainian Orthodox Church v. Fun Bun, Inc.,* 3 Pa. Commonwealth Ct. 394, 283 A. 2d 308 (1971).

We hold that appellants have not met their burden in that they have not shown the ordinance to be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety and general welfare.

The tract in question abuts, in the rear, Chatham College Campus, a pre-existing "R-3" zone. It fronts on Murray Hill Avenue, which, taken in the context of

city planning, seems to form a ready made boundary for the separation of the "R-3" zone from the "R-1" zone across the street. Appellants have certainly not proven that the use of this natural boundary was an unreasonable judgment by the City Council.

From the very nature of the proposed use as a library and lecture hall,[3] it is not unreasonable to conclude that commercial activity will not intensify. Nor is there evidence that danger to residents will be significantly increased. Excessive congestion is also not a factor since off-street parking is to be provided. The ordinance in question here merely extended a pre-existing zone in accordance with the legislative judgment. It was not invalid as spot zoning. See *Upper Darby Township Appeal,* 413 Pa. 583, 586, 198 A. 2d 538 (1964).

We would like to emphasize that in order to declare the zoning of a certain tract invalid as spot zoning, it is not necessary that the tract in question be an island in the sense that it differs from all contiguous land. For example, a corner lot or a lot on the edge of one tract that abuts land in a differently zoned tract could be declared to have been spot zoned although the tract may not be an island in the traditional sense of the term. In *Schubach v. Zoning Board of Adjustment,* 440 Pa. 249, 270 A. 2d 397 (1970), the land in question was not completely surrounded by one zoning classification but in fact abutted property that was zoned differently. It was, however, within that one zoning district, the only property singled out for special treatment. The Supreme Court mindful of the fact that a natural zone boundary existed, showed its distaste for creeping zone extensions by declaring the ordinance invalid as spot zoning.

---

[3] Indeed, it was stated by an officer of a resident's association that much of the appeal of Murray Hill Avenue as a residential area was its proximity to universities, their libraries and attendant cultural activities. Record at page 81.

Appellants have not borne their burden of proving that the amendments in question were not in accordance with a comprehensive plan. It is well settled that a rigid master plan is not required. *Donahue v. Zoning Bd. of Adj.*, 412 Pa. 332, 194 A. 2d 610 (1963); *Key Realty Co. Zoning Case*, 408 Pa. 98, 182 A. 2d 187 (1962). Public hearings regarding the proposed changes were held and the well contemplated decision of the legislative body was to amend the zoning ordinance. Considering the presumption afforded this judgment, and taking into account the tenor of the general area, we are of the opinion that this legislation reflects and implements the "totality of a municipality's program of land utilization, considering both the land resources available and the needs and desires of the community." *See Donahue, supra* at 335; *Key Realty, supra*, at 100-01.

Appellants also contend that the application for the conditional use was made under the wrong provisions of the Zoning Ordinance of the City of Pittsburgh. The basis of this contention is that Chatham College is not a "publicly assisted educational institution" within the meaning of Section 2801-1-A(7) of the Zoning Ordinance of the City of Pittsburgh and therefore the application for conditional use should not have been granted under the terms of that section.[4] We do not agree.

Section 2801(1)(A)(7) of the Pittsburgh Zoning Ordinance authorizes conditional use permits for "publicly-assisted educational institutions." There was uncontroverted testimony that Chatham College had received a grant from the Federal Government for approximately one quarter of the cost of construction. The Higher Education Facilities Act, Act of December 16, 1963,

---

[4] Appellants contend that the proper provision for Chatham College to have used was that relating to educational institutions exclusively.

P. L. 88-204, 20 U.S.C.A. §§701-758, which authorizes the grant in question, declares in its statement of policy that its purpose is to aid education "through assistance to institutions of higher education." 20 U.S. C.A. §701. This Federal grant enables Chatham College to be considered a "publicly assisted educational institution" within the meaning of Section 2801(1)(A)(7) of the Pittsburgh Zoning Ordinance so far as the proposed new buildings are concerned. Therefore, the application for a conditional use was proper under that section.

Appellants lastly contend that the Board of Adjustment abused its discretion in refusing to pass on the validity of the challenged zoning ordinances and in refusing to make findings of fact based on the evidence presented at the hearings. This contention is without merit.

Act of March 31, 1927, P. L. 98, No. 69, §7, 53 P.S. §25057 specifies the powers of the Board of Adjustment and includes among these the power "to hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination, made by an administrative official in the *enforcement* of any ordinance. . . ." (Emphasis added.) The Board, as the administrative body, is charged with the administration and enforcement of ordinances and is not charged with determining the constitutionality of legislatively prescribed ordinances. *See Blank's Appeal,* 90 Pitt. L. J. 159 (1942).

A similar refusal by the Board of Adjustment to rule on the validity of zoning ordinances was upheld in *Donahue v. Zoning Board of Adjustment, supra.* It was proper, in the instant case, for the Board of Adjustment, an administrative agency, to refuse to review the validity of a legislative act of the City Council.

Order affirmed.