## Flowers v. Northampton Bucks County Municipal Authority

*Harold B. Vikoren, H. Ober Hess* and *Robert Sugarman,* for plaintiffs.

*Henry H. Huhn,* for defendants.

MOUNTENAY, J., March 8, 1972.—The five plaintiffs are comprised of two individuals who are taxpayers, residents and electors of Northampton Township, Bucks County; a nonprofit corporation which owns and occupies property within the township; and two individuals who are members of the nonprofit corporation plaintiff. Defendant Northampton Bucks County Municipal Authority is a municipal authority organized under the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §301, et seq., as amended, which furnishes public water service within Northampton Township. Defendant Edward W. Davis is chairman of the authority and is described in the caption as being sued "individually and as chairman." The authority proposes to erect and maintain two 1,000,000-gallon water storage tanks, plus the usual incidental facilities and to drill wells on a tract of land containing approximately three acres in the said township. The storage tanks will reach a height of 32 feet above ground level. The complaint avers that plaintiffs "reside and own property adjoining, nearby and close to" the aforementioned tract, but which plaintiffs are adjacent and which plaintiffs are merely nearby does not appear. Plaintiffs seek to enjoin defendants from erecting the water tanks and facilities and from drilling the wells. Plaintiffs' second amended complaint is before the court, and defendants have filed preliminary objections in the nature of a demurrer.

The second amended complaint contains three separate counts under the headings (1) Arbitrary and Capricious Action, (2) Nuisance and (3) Environ-

mental Policy, respectively. None of the three avers any facts which state a cause of action against Mr. Davis individually, and it is difficult to understand why he was named as a defendant even in his capacity as chairman, let alone as an individual. Certainly, a decree binding upon the authority would likewise bind Mr. Davis acting in his capacity as chairman thereof. Accordingly, the demurrer will be sustained as to defendant "Edward W. Davis, individually and as chairman." All further references herein to the "defendant" will, therefore, pertain to Northampton Bucks County Municipal Authority only.

As already noted, plaintiffs object first to the erection of facilities and second to the drilling of wells. We shall discuss these matters separately.

## ERECTION OF FACILITIES

Proceeding to count I (Arbitrary and Capricious Action) of the second amended complaint, paragraph 10 thereof avers that "defendants' decision . . . was not based upon full and good faith consideration of readily available alternate methods of construction and . . . alternate sites . . ." Paragraph 13 avers that defendants acted "arbitrarily . . . in failing to give full consideration to a site optionally suited for reasons of economy, safety, ecology and environment." In addition, plaintiffs repeatedly state that defendants acted in an arbitrary and capricious manner in selecting the particular property for the erection of these facilities.

Does count I state the material facts upon which the cause of action is based as required by Pennsylvania Rule of Civil Procedure 1019(a), or do the averments thereof constitute conclusions only? The mere allegation of arbitrary and capricious action constitutes a conclusion of law: Narehood v. Pearson, 374 Pa.

299, 302 (1953). As to the averment of defendant's failure to give "full" or "good faith" consideration, plaintiffs certainly might have gone into greater detail. For example, plaintiffs might have described the type and extent of defendant's deliberations and the data which defendant considered or failed to consider. But pleading in this manner would probably have bordered upon pleading evidence and thus have become just as objectionable under Pa. R. C. P. 1019(a) as if plaintiffs were to plead mere conclusions. Similarily, plaintiffs could have spelled out the other alternatives which plaintiffs contend would have been safer and more economical than defendant's proposal and could have stated why the former would be less detrimental to environmental and ecological considerations. However, a recital of the particular facts underlying these considerations would accomplish little toward the ultimate disposition of the litigation. Moreover, defendant can determine by discovery, the specific nature of the economic, safety, ecological and environmental factors upon which plaintiffs are relying.

The court has wide discretion in interpreting the averments of a pleading and in determining whether what might normally be a conclusion of law will not be considered a material fact in a particular pleading: Commonwealth ex rel. Alessandroni v. Sacks, 39 D. & C. 2d 295 (1965); Potato City, Inc. v. Bartlett, 43 D. & C. 2d 725 (1968); Carvella v. Handy Andy Food Mart, 44 D. & C. 2d 133 (1968). While, as stated above, the complaint in question might have been more factual and less conclusionary, we believe that defendant is adequately advised of the basis of plaintiffs' action.

Accepting, then, plaintiffs' averments as a statement of material facts rather than as mere conclusions of

law, do they state a cause of action? In the first place, the activities of municipal authorities are subject to judicial review: Price v. Philadelphia Parking Authority, 422 Pa. 317 (1966); Schwartz v. Urban Redevelopment Authority, 411 Pa. 530 (1963); Keystone Raceway Corp. v. State Harness Racing Commission, 405 Pa. 1 (1961); Redevelopment Authority of the City of Erie v. Owners or Parties in Interest, 1 Com. Ct. 378 (1971). Secondly, it is axiomatic that in order to avoid capricious action, a public body must give proper consideration to *all* relevant factors. That environmental considerations have become relevant factors is demonstrated by the adoption of Article I, sec. 27, of the Pennsylvania Constitution (see infra). See also Commonwealth of Pennsylvania v. National Gettysburg Battlefield Tower, Inc., 13 Adams L. J. 45 (1971); Commonwealth v. Barnes & Tucker Co., 1 Com. Ct. 552 (1971); and Camp Hill Borough Condemnation, 43 D. & C. 2d 418 (1967). In the last cited case, the court discussed the esthetic consequences of a condemnation by the Department of Highways for bridge purposes and apparently doubted the wisdom of the secretary's decision. However, the court approved the condemnation because the secretary *had* given the esthetic aspects of the matter careful study, and, therefore, had not acted arbitrarily and capriciously. Nevertheless, the tenor of these cases indicates that we are not without precedent in concluding that any action taken by defendant without having given full and good faith consideration to environmental and ecological factors would constitute arbitrary and capricious action.

There are cases, it is true, holding that mere psychic and purely esthetic objections to a given use of land will not support an injunction: Young et al. v. St Martin's Church et al., 361 Pa. 505 (1949); Richland

Township v. Breiner, 8 Bucks Co. L. Rep. 107 (1958); Wilson v. Morrissey, 3 Bucks Co. L. Rep. 194 (1953). Nor is a mere depreciation in the value of surrounding properties sufficient: Young et al. v. St. Martin's Church et al., supra; Hannum v. Oak Lane Shopping Center, Inc., 383 Pa. 618 (1956). However, these cases dealt with alleged nuisances, whereas the scope and breadth of the various considerations underlying the exercise of sound discretion by a public body must go far beyond a mere determination of whether or not a proposed project will constitute a nuisance at law. Indeed, the question of nuisance was not even discussed in Camp Hill Borough Condemnation, supra.

Our conclusion that a public body must take into consideration all relevant factors, including the ecological, environmental and esthetic consequences of its proposed action, is not to say that plaintiffs' burden will be light. While an administrative body is not wholly immune from judicial review, the scope of review is limited to whether there has been a manifest abuse of discretion, and, absent such a finding, the court will not substitute judicial discretion for administrative discretion even though the court might, upon initial consideration, have reached a different result: Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1954). See also Weber v. Philadelphia, 437 Pa. 179 (1970); Washington Park Inc. Appeal, 425 Pa. 349 (1967); Eways v. Board of Road Supervisors, 422 Pa. 169 (1966); Faranda Appeal, 420 Pa. 295 (1966); Chillisquaque Creek Watershed Association v. Sanitary Water Board, 2 Com. Ct. 561 (1971); Moretti et al. v. State Board of Pharmacy, 2 Com. Ct. 121 (1971); City of Philadelphia v. SEPTA, 1 Com. Ct. 101 (1970); Camp Hill Borough Condemnation, supra. Of course, this problem does not confront us at this stage of the proceeding.

In view of the foregoing, we are of the opinion that count I states a cause of action with respect to the anticipated erection of storage tanks and incidental facilities.

Turning our attention to count II of the second amended complaint, plaintiffs assert therein that defendant's proposed facilities will constitute a nuisance. The only facts averred by plaintiffs which are relevant to the threatened nuisance are (1) that the facilities are about to be built; (2) that plaintiffs own property or reside adjacent or nearby; (3) that the erection of the facilities will substantially or unreasonably interfere with their use and enjoyment of their respective properties; and (4) that the erection of the facilities will decrease the value of the surrounding properties. There was no averment that the *manner* in which the facilities are to be operated will be bothersome or annoying. Therefore, even assuming, which we do not, that all of the averments summarized above are well pleaded, it becomes apparent that plaintiffs' claim of nuisance rests upon the esthetic, environmental and ecological considerations raised in counts I and III of the second amended complaint rather than upon some anticipated mismanagement, noise, odor, traffic, or something of a similar nature. In this connection, it is also important to note that the complaint does not describe the neighborhood as residential or in any other way characterize it.

A fair test as to whether an activity, lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of carrying on the activity complained of in the particular locality and in the manner and under the circumstances of the case. See Reid v. Brodsky, 397 Pa. 463 (1959), which involved a "rough" taproom in a quiet residential neighborhood. However, as stated above, the second

amended complaint sets forth neither the type of locality nor the manner in which it is anticipated that the activity in question will be conducted. This deficiency alone would seem fatal to the claim of nuisance.

Even assuming the existence of a residential neighborhood, however, we are not prepared to rule that the mere *presence* of storage tanks for municipal water service would constitute a nuisance apart from any improper or annoying manner of operation. Again, neither mere psychic objections nor a depreciation in property values will constitute sufficient basis for an action to enjoin a nuisance, and the complaint neither sets forth nor even suggests any basis for its "nuisance cause of action" other than these. In this connection, it was held in Young v. St Martin's Church, supra, that the establishment and maintenance of a large cemetery in a fine residential area did not constitute a nuisance per se, and, similarily, Hannum v. Oak Lane Shopping Center, Inc., supra, held that the construction of a super market and parking lot for patrons in a predominately residential neighborhood did not constitute a nuisance as a matter of law. Obviously, if the manner of actual operation of defendant's facilities were to constitute a substantial and unreasonable interference with the enjoyment of plaintiffs' properties, such conduct could be enjoined, although it is doubtful that such an action would lie to enjoin *anticipated* future annoyances.

Since count II of the second amended complaint asserts only the mere *existence* of a water storage facility as the basis for its claim that a nuisance will be produced, and particularly since the nature of the neighborhood is not averred, we believe that count II fails to set forth a cause of action.

We shall finally consider the third count of the second amended complaint, this being entitled

"Environmental Policy." The complaint here incorporates by reference the averments of the preceding counts and then states, in substance, that defendant's proposed action is contrary to enviromental policy as declared in certain acts of Congress; that it is violative of the right to a decent enviroment in accordance with the fifth, ninth and fourteenth amendments to the United States Constitution; and that it is contrary to article I, sec. 27, of the Constitution of Pennsylvania.

We do not perceive the applicability of the Federal legislation nor of the fifth, ninth and fourteenth amendments. As regards article I, sec. 27, of the Pennsylvania Constitution, approved by the electorate on May 18, 1971, that provision reads as follows:

"Natural Resources and the Public Estate—

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

This amendment requires no statutory implementation, but it may be that the Attorney General of Pennsylvania is the only person who has standing to invoke its provisions. See Commonwealth of Pennsylvania v. National Gettysburg Battlefield Tower, Inc., supra.

As stated previously, it seems self-evident that the sound exercise of discretion by any public body is premised upon and would indeed require a prior consideration of *all* factors relevant to the proposed action. It seems just as obvious that among these factors should be the environmental, ecological, and

even the esthetic consequences of any action taken by such a body.

However, the thrust of count III is not entirely clear. Environmental policy does not exist in a vacuum. On the contrary, it must be applied to the physical surroundings in question, and some official body must have the obligation of performing this function. Plaintiffs in count I have already challenged the authority's failure properly to exercise this function, characterizing the authority's action as arbitrary and capricious. Presumably, therefore, some different theory underlies count III. Perhaps the theory of count III is that the court should initially exercise its own discretion in applying the environmental policy to the particular circumstances of this case. But this the court cannot do. As noted previously, the initial responsibility for this function lies with the authority board, the court's role being limited to one of review.

Who, then, under count III is expected to perform this function of applying enviromental policy to the physical surroundings? It would not be the *authority* (because this is covered by count I); it could not be the *court* at this stage of the proceeding; and count III does not suggest the existence of any other body which should perform the function.

In view of the foregoing, it appears that count III simply asserts an abstract principle of environmental policy. But lacking provision for the actual application of that policy, we believe that count III, standing alone and apart from count I, fails to state a cause of action.

## DRILLING OF WELLS

Plaintiffs' claim for injunctive relief with respect to defendant's anticipated drilling of artesian wells presents a somewhat different problem from that

presented with respect to the erection of storage tanks and incidental structures. Plaintiffs specifically complain in the first two counts of their second amended complaint of defendant's intention to drill wells on the premises in question. The allegations of the first two counts are then incorporated by reference into count III. However, the law pertaining to underground waters does not lend itself very well to any of the "causes of action" set up in these three counts of the complaint. Accordingly, we shall make no attempt to "force" plaintiffs' case with respect to underground waters into any one of these three theories of action.

Generally speaking, the law with respect to underground *streams* is the same as that pertaining to surface water courses. On the other hand, damage to one landowner resulting from the use by another of *percolating* waters was, traditionally, absent negligence or malice, *damnum absque injuria:* Williams et al. v. Ladew et al., 161 Pa. 283 (1894). This rather harsh rule with respect to percolating waters has been modified, and the present law in Pennsylvania is to the effect that no one has a right to appropriate percolating waters to the detriment of his neighbor where the appropriation is for an "unlawful purpose." Such "unlawful purpose" includes the diversion of water for sale to others away from the land in question: Rothrauff et ux. v. Sinking Spring Water Company, 339 Pa. 129 (1940). Even the diversion of water by a municipal authority for public water service is subject to this rule: Hatfield Township et al. v. Lansdale Municipal Authority, 403 Pa. 113 (1961).

In the Hatfield Township Case, supra, "test pumping" of a municipal authority's wells indicated that the private wells of certain nearby property owners

would be adversely affected. The court, therefore, enjoined the operation of the authority's wells, conditioned, however, upon the authority's connecting its water distribution system to the properties of the injured parties without cost and providing them with water at established rates. If plaintiffs in the instant case can establish their right to relief, the particular form of relief granted in the Hatfield Township Case would probably be appropriate.

It should be noted that the *operation,* and not the *drilling,* of wells was enjoined in the Hatfield Township Case. Whether plaintiffs can establish that they will suffer irreparable harm by the mere *drilling* of wells by defendant is questionable. Nevertheless, we are not confronted with this particular question at the present stage of the proceedings. Suffice it to say that under the rule of Hatfield Township v. Lansdale Municipal Authority, supra, the complaint has stated facts which, if proved, would entitle plaintiffs to some form of equitable relief.

As discussed earlier, the subterranean waters aspect of plaintiffs' complaint does not fit well into any of the three classifications (Arbitrary and Capricious Actions, Nuisance and Environmental Policy) set up in the second amended complaint. For the reasons set forth above under the heading "Erection of Facilities," count III (Environmental Policy), fails to state a cause of action. As regards count II (nuisance), no case has been called to the attention of the court wherein an anticipated diversion of underground water was held to constitute a nuisance, and we are not disposed so to regard it. It may well be that neither does the theory of count I (Arbitrary and Capricious Action) satisfactorily encompass the problem of the diversion of waters. However, facts sufficient to state a cause of action for an anticipated

interference with underground waters have been pleaded. Moreover, the field of environmental law is a relatively new one wherein legal precedents are not plentiful. Therefore, rather than to dismiss the complaint simply because we have conceptual difficulty in classifying plaintiffs' cause of action regarding water rights into the somewhat rigid categories set up in the complaint, we shall permit plaintiffs to maintain this particular aspect of their claim under the heading of count I (Arbitrary and Capricious Action). Defendant's preliminary objections with respect to counts II and III will be sustained with respect to the matter of water rights as they were with respect to the matter of the proposed erection of facilities.

## ORDER

And now, March 8, 1972, the court orders the following:

1. Defendant's preliminary objections to plaintiffs' second amended complaint are sustained as to defendant Edward W. Davis, individually and as chairman, and the action is dismissed as to him.

2. Defendants' preliminary objections insofar as they relate to count I (Arbitrary and Capricious Action) as set forth in plaintiffs' second amended complaint are dismissed.

3. Defendants' preliminary objections insofar as they relate to count II (Nuisance) as set forth in plaintiffs' second amended complaint are sustained, and plaintiffs are given leave to amend within 20 days from the date hereof.

4. Defendants' preliminary objections insofar as they relate to count III (Environmental Policy) as set forth in plaintiffs' second amended complaint are sustained, and plaintiffs are given leave to amend within 20 days from the date hereof.