Schubach, et al. *v.* Silver, et al.

154

Argued February 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*J. Leon Rabben,* for appellants.

*Irvin Stander,* for appellees, Silver, Pine Hill and Yellin and Co.

*Howard D. Scher,* Assistant City Solicitor, with him *John Mattioni,* Deputy City Solictor, and *Martin Weinberg,* City Solicitor, for appellee, City of Philadelphia.

*David Maxey*, with him *Henry W. Sawyer* and *Drinker, Biddle & Reath*, for intervenor, Girard Trust Bank.

OPINION BY JUDGE BLATT, June 8, 1973:

Various aspects of the controversy involved in this case have been argued at various times before the Philadelphia Zoning Board of Adjustment (Board), before numerous judges of the Court of Common Pleas of Philadelphia, at least twice before the Supreme Court of Pennsylvania and once in this Court.[1]

The point in controversy here involves the current use of a tract of land in Philadelphia owned by Pine Hill Home, Inc. (Pine Hill) and having erected thereon by Pine Hill a 162-bed nursing home and rehabilitation center for physically and mentally retarded children. The city block on which the property is located is bounded on the north by Red Lion Road, on the east by Verree Road, on the south by Chesworth Road, and on the west by Ferndale Street. The Pine Hill property consists of approximately two acres, abutting on Verree Road.

When Pine Hill purchased the land concerned in 1966, the entire block in which it was located was zoned R-4 Residential, a classification which permits a nursing home only if a certificate therefor is issued by the Board.[2] The Philadelphia Code, Zoning and Planning, §§14-203(2)(f) and (h). The area across Verree Road was zoned R-3 or R-4 Residential, and that across Chesworth Road was zoned R-4 Residential, while that across Ferndale Street, where the 1966 zoning had per-

---

[1] *Schubach v. Department of Public Welfare*, 4 Pa. Commonwealth Ct. 636, 287 A. 2d 890 (1972).

[2] A small piece of land on the southwest corner of Verree Road and Red Lion Road was later rezoned to "Office-Commercial" on December 15, 1969. Apparently there was no challenge to that rezoning.

mitted the erection of a shopping center, was rezoned to R-12 Residential in April, 1970, a classification which permits the erection of apartments. All other property in the general area south of Red Lion Road was zoned R-3, R-4 or R-5 Residential. On the north, immediately across Red Lion Road from the block in which the Pine Hill tract is located, about half the frontage was R-5 Residential, and the other half was C-2 Commercial, containing a few small stores and a gasoline station, and about one block west along Red Lion Road there was a large tract of land zoned G-2 General Industrial. The other land to the north of Red Lion Road was zoned mostly R-2 and R-5 Residential.

Beginning in 1966, Pine Hill made repeated efforts to obtain a special certificate so as to build a rehabilitation center on its land, and, when those requests were refused by the Board, Pine Hill then sought to have the land rezoned to C-2 Commercial. This effort was also unsuccessful. In 1968 Pine Hill once more sought a rezoning, and this time City Council approved the change in Ordinance 36. The City of Philadelphia thereafter granted the zoning and building permits required by Pine Hill to commence construction.

The validity of Ordinance 36 was challenged by a group of neighboring property owners (essentially the same appellants as here), and they, being unsuccessful both before the Board and before the Court of Common Pleas of Philadelphia County, appealed to the Supreme Court. Meanwhile, Pine Hill had begun construction of the rehabilitation center, and construction continued throughout the course of these proceedings, Pine Hill conceding that it was proceeding at its own risk. On October 9, 1970, the Supreme Court handed down its opinion,[3] holding that Ordinance 36 constituted a "classic instance of 'spot zoning,' " and was thus invalid.

---

[3] *Schubach v. Zoning Board of Adjustment*, 440 Pa. 249, 270 A. 2d 397 (1970).

The events occurring immediately following the issuance of the Supreme Court's order in the above case (hereinafter *Schubach* I) are in dispute, but it seems clear that the City refused to revoke the permits previously granted to Pine Hill despite repeated requests for such action made by the appellants. It is also alleged that work continued on the rehabilitation center.

The appellants had filed equity proceedings in the lower court on December 8, 1970, asking injunctive and other relief. After the Supreme Court's ruling on October 9, 1970, and the failure of Pine Hill to cease construction, they then petitioned the Supreme Court on January 12, 1971 for an order to enforce its ruling of October 9, 1970. The City thereupon revoked the building and zoning permits which had been granted to Pine Hill, and passed another ordinance (Ordinance 2139) which again rezoned the Pine Hill tract as C-2 Commercial. This time, however, the ordinance also applied to that portion of the block between the northern edge of the Pine Hill tract and Red Lion Road. The property thereby rezoned included about 1½ acres more, therefore, than the 2 acres covered by Ordinance 36, and it included not only Pine Hill's tract and the adjacent land then zoned R-4, but also that piece of ground owned by the Girard Trust Bank which on December 15, 1969 had been rezoned from R-4 to O-C Office-Commercial. On January 27, 1971, the zoning permit to Pine Hill was reinstated by the City and an occupancy permit was also issued.

On January 29, 1971, the Supreme Court entered an order which, *inter alia,* directed that no further construction of the rehabilitation center be continued nor any operation of said center commenced until after the determination of the equity proceedings (this case) then pending in the lower court. An answer and new matter were filed by the defendants in the equity action begun on December 8, 1970, and subsequently, on Feb-

ruary 4, 1971, leave was granted to the defendants to file supplemental new matter, specifically evidence of the enactment of Ordinance 2139. The appellants asserted as a basis for the relief sought that: (1) the rehabilitation center was constructed contrary to the decision of the Supreme Court in *Schubach I;* (2) *Schubach I* is res judicata; (3) the rehabilitation center constitutes a private nuisance to the abutting landowners; and (4) Ordinance 2139 is arbitrary, discriminatory, special legislation, constitutes spot zoning and is therefore unconstitutional.

Following extensive hearings, Judge SPORKIN handed down a Decree Nisi for the lower court, and this was followed by an Opinion dated September 10, 1971, whose essential elements are well summarized in appellee Pine Hill's brief, as follows: "(1) That the Court has equitable jurisdiction of the subject matter and the parties; (2) That Bill No. 2139 was a valid and constitutional zoning ordinance; (3) That the nursing home does not constitute a nuisance; (4) That Pine Hill Home, Inc., may proceed to utilize the structure erected on its premises as a nursing home; (5) That no damages, compensatory or punitive, are awarded; (6) That the continued erection of the nursing home after the Supreme Court's decision of October 9, 1970 declaring Bill 36 unconstitutional violated the then existing R-4 Residential classification; (7) That the continued construction of the nursing home after January 29, 1971 was not in compliance with the directive of the Supreme Court entered that date, and that the imposition of sanctions lies within the sound judgment of the Supreme Court; (8) That the nursing home is required to install certain specified shrubbery on its property; (9) The nursing home is required to install certain corrective measures to secure proper drainage of surface waters on its property; and (10) Pine Hill Home, Inc. is required to pay the costs of this proceeding."

Exceptions were filed by the appellants and by certain of the appellees, and a Supplemental Opinion was filed by the lower court en banc on February 14, 1972. In that opinion, the court dismissed the exceptions and made the Decree Nisi final, but it also assessed a fine against Pine Hill in the amount of $4200.00 for violations of the City Zoning Code, with the fine to be paid to the City.

An appeal was thereafter taken to the Supreme Court by the neighboring property owners (Pine Hill did not appeal from the imposition of the $4200.00 fine), which transferred the appeal to this Court "while retaining jurisdiction of the case insofar as it relates to this Court's order of January 29, 1971."

We shall limit our attention, therefore, to: (1) the validity of Bill No. 2139; (2) the res judicata effect of *Schubach I;* (3) the building of the rehabilitation center as constituting a nuisance; and (4) the right of the appellants to damages, compensatory and/or punitive.

First, however, we must consider the jurisdiction of equity in this matter.

### Equity Jurisdiction

Although neither party raised the issue of equity jurisdiction before this Court (it was considered by the court below), we believe it necessary to consider briefly whether or not it was permissible to challenge the validity of Ordinance 2139 through equity rather than through an appeal directly to the Board, as was done in *Schubach I.*

There have been a few situations in which the courts have recognized the right of a property owner to seek the aid of equity to enforce or to challenge the provisions of a zoning ordinance. "The protection of property values is an incident of zoning laws and where an adjoining property owner can show that his property is damaged as a result of a violation of the zoning regula-

tions, he has a right to appeal to the courts for aid in enjoining the continuing infraction of the laws. . . ." *Phillips v. Griffiths*, 366 Pa. 468, 471, 77 A. 2d 375, 377 (1951). *See Kunkle v. Zaleski*, 417 Pa. 631, 208 A. 2d 840 (1965); *DeBlasiis v. Bartell and Oliveto*, 143 Pa. Superior Ct. 485, 18 A. 2d 478 (1941). The teaching of these cases is that, "as a prerequisite to the attachment of equity jurisdiction, the adjoining or nearby property owner must aver—and later prove—that the alleged violation of the zoning ordinance has resulted in an injury not common to all the neighboring property owners but 'special and peculiar' to his property." *Burne v. Kearney*, 424 Pa. 29, 32, 225 A. 2d 892, 894 (1967). As will be noted below, however, this theory could not provide a proper basis here for equity jurisdiction, for the complainants have failed to prove damages "special and peculiar" to their property. A more appropriate basis for equity jurisdiction in this case, however, is the theory enunciated in such cases as *Gladwyne Colony, Inc. v. Lower Merion Township*, 409 Pa. 441, 187 A. 2d 549 (1963) and *Wood v. Goldvarg*, 365 Pa. 92, 74 A. 2d 100 (1950). These cases note that when a legal procedure is available, in this case an appeal to the Board, which would not provide an adequate and complete remedy, equity jurisdiction may be invoked. Such would be appropriate here where the appellants are clearly seeking far more than merely a decision on the validity of a zoning ordinance.

We hold, therefore, that it was proper for the appellants to bring this action in equity.

### RES JUDICATA

The appellants also urge upon us that the decision of the Supreme Court in *Schubach I* as to the validity of Ordinance 36 is res judicata as to the validity of Ordinance 2139.

In order for a matter to be res judicata "there must be a concurrence of the four following conditions: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made. . . ." *Siegfried v. Boyd,* 237 Pa. 55, 59, 85 A. 72, 73 (1912). *See Helmig v. Rockwell Manufacturing Company,* 389 Pa. 21, 131 A. 2d 622 (1957); *Wallace's Estate,* 316 Pa. 148, 174 A. 397 (1934); *McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 300 A. 2d 815 (1973); *City of Philadelphia v. Stradford Arms, Inc.,* 1 Pa. Commonwealth Ct. 190, 274 A. 2d 277 (1971). The "law of the case" principle, of course, is not applicable in two different appeals involving different cases, even though the factual determinations and the parties were the same in each case. *Stradford Arms, supra.*

The mere fact that the Supreme Court declared an ordinance unconstitutional which rezoned the Pine Hill tract to C-2 does not for all time foreclose the possibility of a valid rezoning which would include that same tract. Ordinance 2139 rezones a tract of land with approximately 75% more area than the tract rezoned by Ordinance 36, and despite the inclusion of the Pine Hill tract in each ordinance, they are different enough to provide two distinct bases for separate causes of action. The validity of Ordinance 2139 has not in fact been determined by the decision of the Supreme Court in *Schubach I,* and we must agree, therefore, with the lower court that the doctrine of res judicata is not applicable.

The fact that the doctrine of res judicata is not here applicable does not foreclose, of course, the possibility of the application of the related doctrine of collateral estoppel. This Court has recently considered this subject at length in *McCarthy, supra,* wherein we stated: "In the development and application of collateral

estoppel, Pennsylvania courts have adhered to the general rule set forth in §68(1) of the Restatement of Judgments: 'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. . . .' See, Pilgrim Food Products Co. v. Filler Products, Inc., 393 Pa. 418, 421-2, 143 A. 2d 47, 49 (1958); Thal v. Krawitz, 365 Pa. 110, 112, 73 A. 2d 376, 377 (1950). . . . From this rule the courts have directly noted several basic requirements. Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment (or decree, as the case may be); and (4) were 'material' to the adjudication." 7 Pa. Commonwealth Ct. at 618-619, 300 A. 2d at 820-821.

As stated above, because of the additional property included in Ordinance 2139, the Supreme Court's decision in *Schubach I* cannot act as res judicata, but it is basically only that size differential which distinguishes *Schubach I* from this case (as to the validity of the rezoning). The parties and the issues are essentially the same and the neighborhood has changed little, if at all, in the intervening period. We must, therefore, hold that certain of the determinations made by the Court in *Schubach I* are still conclusive as between these parties, among them being that: (1) the Pine Hill tract is in the midst of detached dwelling houses and the lot does not differ from its neighbors by either location or topography, (2) there is a need, in general, for nursing homes in Philadelphia, but there is no reason to believe that this home could not be built in a properly zoned area and there is no evidence that this nursing home would fulfill the needs of this particular neigh-

borhood, and (3) the existence of the large commercially zoned area a few hundred feet to the northwest of the Pine Hill tract does not per se indicate that the area is not truly residential in nature.

There is nothing in this record to convince us that the situation in the neighborhood has significantly changed so as to invalidate these determinations by the Supreme Court in *Schubach I*. There was, of course, convincing testimony that neighborhood rehabilitation centers are advantageous in the treating of patients, but there was no new evidence which would run contrary to the Supreme Court's determination that the center could be located in a properly zoned area elsewhere. These particular determinations, therefore, are conclusive between the parties in this case, and the doctrine of collateral estoppel prevents their being questioned at this time. Their importance will be considered below in our discussion of "spot zoning."

### PURPOSE OF ORDINANCE 2139 AND PROPRIETY OF ITS ADOPTION

The appellants have questioned the propriety of the City Council's enactment of Ordinance 2139, asserting that Council's sole purpose was to overrule the order of the Supreme Court in *Schubach I,* and speeches and articles by City Councilmen and others were introduced to support this allegation. It has been held, of course, that "[t]he intention of council may be ascertained by considering the object to be attained and the circumstances under which the ordinance was enacted, the former ordinance on the same subject, and the consequences of a particular interpretation." *Philadelphia v. Phillips,* 179 Pa. Superior Ct. 87, 91, 116 A. 2d 243, 245 (1955). On its face, however, Ordinance 2139 is unambiguous and is a typical ordinance rezoning a tract of land from residential to commercial use, and, even if we were to give credence to the argument of the

appellants that the ordinance was actually intended to overrule *Schubach I,* that would not in itself be grounds for invalidation. Clearly the invalidating of an ordinance by the courts cannot be held to preempt the legislature forever from again atempting to accomplish the purpose of the original ordinance, but in a valid and legal manner. "The ultimate power [to enact zoning ordinances] is vested in the Council, and its good faith in acting for the public welfare cannot be questioned by the judicial branch of government." *Gratton v. Conte,* 364 Pa. 578, 583, 73 A. 2d 381, 384 (1950). "It is not the function of a court to substitute its discretion for that of a City Council, except where that body has manifestly abused its powers by arbitrary or confiscatory acts. . . ." *Silver v. Zoning Board of Adjustment,* 381 Pa. 41, 45, 112 A. 2d 84, 87 (1955). Essentially, what the appellants are asking us to do here is to question "the motives of the municipal legislative body in making the zoning changes, which a judicial tribunal cannot inquire into in the absence of an abuse of discretion." *Gladwyne Colony, Inc., supra,* 409 Pa. at 447, 187 A. 2d at 552. We can see here no such abuse of discretion, nor can we find that this is illegal special legislation as was the case in *Yocum v. Power,* 398 Pa. 223, 157 A. 2d 368 (1960) and *Shapiro v. Zoning Board of Adjustment,* 377 Pa. 621, 105 A. 2d 299 (1954).

The appellants have also questioned the fact that the rezoning accomplished by Ordinance 2139 was done at the urging of and for the benefit of Pine Hill and of appellee Silver, who, in addition to being a principal officer of Pine Hill, was also a City Councilman. Certainly, "it is not unusual for a zoning change to be made on request of a landowner, and such change is not invalid if made in accordance with a comprehensive plan." *Donahue v. Zoning Board of Adjustment,* 412 Pa. 332, 335, 194 A. 2d 610, 611 (1963). As to Silver's position as Councilman, we noted in *Clawson v. Zoning*

*Hearing Board,* 9 Pa. Commonwealth Ct. 124, 304 A.
2d 184 (1973) (which involved a township supervisor),
that, in lieu of a statutory provision to the contrary,
there is no prohibition against a municipal legislator
seeking a change of zoning for his own property. Of
course, such a position might lead to abuses, and there
have been serious charges that Silver did abuse his
position, but there is not sufficient competent evidence
of such to persuade us that it would be a basis for
invalidating Ordinance 2139.

We can find no reason, therefore, for invalidating
Ordinance 2139 on the basis of the purpose for which
it was enacted.

## NUISANCE

On the issue of enjoining the operation of the re-
habilitation center as a nuisance, we find ourselves in
complete agreement with the court below, which re-
fused to so enjoin.

The appellants have urged the lower court, and now
this Court, to find that the rehabilitation center was a
nuisance per se because its construction was in viola-
tion of the zoning law, at least as such law was estab-
lished by *Schubach I.* We can find no support for hold-
ing that a simple violation of a zoning ordinance con-
stitutes a nuisance per se. *Hannum v. Oak Lane Shop-
ping Center, Inc.,* 383 Pa. 618, 119 A. 2d 213 (1956).
Likewise, we cannot find that the lower court erred in
holding that the appellants failed to establish that the
Pine Hill facility was a nuisance in fact. As to the
appellant's request to enjoin the operation of the re-
habilitation center as an anticipated nuisance, any such
threatened injury must be certain and not merely prob-
able. *White v. Old York Road Country Club,* 322 Pa.
147, 185 A. 316 (1936). There was no such certainty
here. The lower court accurately dealt with this issue
by stating: "The testimony presented by plaintiffs, re-

lating to the future conditions which this use will have in the immediate neighborhood, has not demonstrated with sufficient certainty or particularity that a nuisance will result, but rather indicates that the neighbors involved in this matter would prefer the nursing home be located somewhere else. The law should not protect or tolerate the squeamish who abhor the sight of the disabled, the infirm, or the mentally afflicted. . . . [M]entally and physically handicapped children require the type of treatment that this nursing home and rehabilitation center provides. The welfare and care of these children constitutes a meritorious endeavor which all members of society should seek to foster rather than discourage. Equity will not assert its restraining power based upon such reasons."

The court below did not err, therefore, in refusing to enjoin the operation of the rehabilitation center as either a present or an anticipated nuisance.

### DAMAGES

In addition to injunctive relief, the appellants have sought to recover punitive damages as well as compensatory damages for injury caused to their property by the construction of the rehabilitation center and for the loss of property value. The lower court denied all such requests, finding that no measure of damages had been presented to the court and that in fact the appellants failed to prove either any monetary losses or actual damages.

A wrongdoer, of course, is responsible to pay damages to the extent that justice requires and common sense dictates. *Spangler v. Helm's New York-Pittsburgh Motor Express*, 396 Pa. 482, 153 A. 2d 490 (1959). A careful review of the record on our part, however, reveals no basis for holding that the lower court abused its discretion in deciding that the appellants failed to establish any basis for compensatory damages, and,

since there is no basis for compensatory damages, the lower court was also correct in refusing to grant punitive damages. *Hilbert v. Roth,* 395 Pa. 270, 149 A. 2d 648 (1959).

In regard to the request of the appellants that counsel fees be taxed as costs of the proceedings, we must note that counsel fees are not taxable as costs absent express statutory authority, an agreement of the parties or any other established exception. *Kling Appeal,* 433 Pa. 118, 249 A. 2d 552 (1969); *Shapiro v. Magaziner,* 418 Pa. 278, 210 A. 2d 890 (1965). No such basis exists here. We do not hold, of course, that Pine Hill could escape liability for fines imposed by the City of Philadelphia if it has in fact violated any zoning ordinances, but such fines would be payable to the City, not to the appellants.

## Spot Zoning

The most important issue before us is whether or not Ordinance 2139, like Ordinance 36, is invalid as "spot zoning." In regard to this question, the lower court found that the rezoning did not constitute "spot zoning," essentially because the area rezoned by Ordinance 2139 was not an "island." With this conclusion, however, we cannot agree.

"It is undisputed that a zoning ordinance is presumed to be valid and constitutional and that the burden of proving otherwise is upon the person challenging the ordinance. Cleaver v. Bd. of Adj., 414 Pa. 367, 200 A. 2d 408 (1964); DiSanto v. Zoning Bd. of Adj., 410 Pa. 331, 189 A. 2d 135 (1963). Before a zoning ordinance can be declared unconstitutional, the challenging party must prove that its provisions are *clearly* 'arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of the legislation is fairly debatable, the legislative judgment must be allowed to control.

Village of Euclid v. Ambler Realty Co., 272 U.S. 365.'
Glorioso Appeal, 413 Pa. 194, 198 (1964) 196 A. 2d 668.
St. Vladimir's Ukrainian Orthodox Church v. Fun Bun,
Inc., 3 Pa. Commonwealth Ct. 394, 283 A. 2d 308
(1971)." (Emphasis in original.) *Bidwell v. Zoning
Board of Adjustment*, 4 Pa. Commonwealth Ct. 327,
331, 286 A. 2d 471, 473 (1972). "It is true, of course,
that, even though the courts of this Commonwealth are
reluctant to interfere with the actions of municipal
legislative bodies in regard to zoning, they will not let
ordinances stand which constitute spot zoning." *Claw-
son, supra*, 9 Pa. Commonwealth Ct. at 128, 304 A.
2d at 186.

So-called "spot zoning" was apparently first de-
scribed and held invalid in Pennsylvania in *Huebner v.
Philadelphia Saving Fund Society*, 127 Pa. Superior
Ct. 28, 192 A. 139 (1937), wherein the Superior Court
held that the rezoning of a single lot differently from
those surrounding it, without some extenuating circum-
stance present, is discriminatory and invalid. This
doctrine has been since expanded so as to be explained
as follows: " 'The legislative intention in authorizing
comprehensive zoning is reasonable uniformity within
districts having in fact the same general characteristics
and not the marking off, for peculiar uses or restric-
tions of small districts essentially similar to the gen-
eral area in which they are situated. Accordingly, an
ordinance cannot create an "island" of more or less
restricted use within a district zoned for a different
use or uses, where there are no differentiating relevant
factors between the "island" and the district. A sin-
gling out of one lot or a small area for different treat-
ment from that accorded to similar surrounding land
indistinguishable from it in character, for the economic
benefit of the owner of that lot or to his economic detri-
ment, is invalid "spot" zoning.' " *Putney v. Abington
Township*, 176 Pa. Superior Ct. 463, 474, 108 A. 2d 134,

140 (1954). "Generally speaking, spot zoning is the arbitrary and unreasonable classification and zoning of a small parcel of land. This small parcel of land is usually set apart or carved out of a surrounding or a large neighboring tract, with no reasonable justification for the differential zoning." *Cleaver v. Board of Adjustment*, 414 Pa. 367, 379, 200 A. 2d 408, 415 (1964).

"A party challenging an ordinance on the basis that it is spot zoning, however, must carry the burden of proving that the ordinance is invalid. Hebeisen v. Philadelphia Zoning Board of Adjustment, 2 Pa. Commonwealth Ct. 331, 277 A. 2d 832 (1971). . . . The topography, location and characteristics of a tract of land may justify its rezoning to a classification different from that of surrounding properties. Cleaver, supra. And, if the rezoning in question serves to reclassify a tract of land so that it fits in with the development of the surrounding property, it is probably not spot zoning. St. Vladimir's Ukrainian Orthodox Church v. Fun Bun, Inc. and Zoning Board of Adjustment, 3 Pa. Commonwealth Ct. 394, 283 A. 2d 308 (1971). Similarly, a municipality may rezone a small piece of property for a use different from that of surrounding uses if such use is in accord with the comprehensive plan and a reasonable use in the area. Trinity Evangelical Lutheran Church [v. City Council of Harrisburg, 2 Pa. Commonwealth Ct. 222, 278 A. 2d 372 (1971)]. And, it has also been held that the natural extension of an already existing district into an adjoining district might not constitute spot zoning. Upper Darby Township Appeal, 413 Pa. 583, 198 A. 2d 538 (1964)." *Clawson, supra,* 9 Pa. Commonwealth Ct. at 129, 304 A. 2d at 187.

Applying these general principles to the case at hand, it seems clear that, when the City of Philadelphia chose to exercise its police power and establish citywide zoning in 1933 it was in effect establishing a system of land use planning, one which hopefully would

result in a consistent future development of the City. The City Council thereby took upon itself not to make arbitrary minor changes in this plan, which cumulatively could lead to the defeat of the coordinated land use planning which the zoning ordinance, in conjunction with a comprehensive plan, was intended to encourage. In this case, however, the City Council has obviously thrust a commercially zoned peninsula into a residential sea without any apparent necessity for so radical a change.

The Supreme Court in *Schubach I* held that there was no evidence of need for this rehabilitation center in this neighborhood, and there has been no evidence introduced in this case which would require us to find to the contrary. As to the other lots rezoned by Ordinance 2139, there is no evidence that their rezoning was necessary for the continuing development of the neighborhood or that it would provide a reasonable use in a residential neighborhood.[4] While it is true that the City Planning Commission recommended the rezoning of the tract, the minutes (admittedly not verbatim) of the Commission's meeting in which the change was recommended, and a letter of December 8, 1970 from the Commission to the Mayor, indicate that the reason for the rezoning was not because it was in accordance with the City's comprehensive plan but merely because the rehabilitation center would not be detrimental to the neighborhood.

The lower court placed great emphasis on the testimony of Mr. John Mitkus, a representative of the Planning Commission, who testified that the tract covered by Ordinance 2139 constituted a "transitional area" between a commercial area to the north and a residential area to the south. This argument is no better than

---

[4] Of course, the lot on the corner of Verree Road and Red Lion Road was already zoned O-C, Office-Commercial, which presumably will permit a use which is desired by its owner.

the "borderline" argument made in *Schubach I*, concerning which the Supreme Court stated: "We are not persuaded by such an argument since it would mean that every borderline area in the city could be subjected to such downzoning." 440 Pa. at 254, 270 A. 2d at 400. Virtually every district would also have "transitional" zones, and these, too, would lead to a constant eroding of the City's comprehensive plan for land use.

The appellants have, therefore, met the tests required to show that the rezoning accomplished by Ordinance 2139 does constitute "spot zoning." Ordinance 2139 rezones a small tract of land within a district zoned for a different use and there are no relevant differentiating factors between the land rezoned and the surrounding district. Likewise, there are no apparent advantages to the surrounding area brought about by the rezoning and no evidence that the rezoning was consistent with the City's comprehensive plan, as in *Clawson, supra*. The one element here which does not conform to the traditional definition of "spot zoning" is that the rezoned area is not an "island," for a small C-2 district across Red Lion Road faces part of the rezoned area. We have recently stated, however: "We would like to emphasize that in order to declare the zoning of a certain tract invalid as spot zoning, it is not necessary that the tract in question be an island in the sense that it differs from all contiguous land." *Bidwell, supra*, 4 Pa. Commonwealth Ct. at 332, 286 A. 2d at 473. While an island has been the most common form of inconsistency noted, clearly, a peninsula such as here can also serve to disrupt communitywide comprehensive land planning. Moreover, even in *Schubach I*, the Pine Hill tract was not surrounded by a single zoning classification, but was bounded by both R-3 and R-4 Residential districts.

We must find, therefore, that Ordinance 2139 does constitute "spot zoning" and is consequently invalid.

## ORDER

Now, therefore, this 8th day of June 1973, we affirm the order of the court below except (1) as to the validity of Ordinance 2139 and (2) as to the right of Pine Hill Home, Inc. to continue to utilize the premises in question as a nursing home and/or as a rehabilitation center, on which issues we reverse the order and remand the record to the court below for further proceedings consistent with this opinion.