CHARLES D. DURFEE AND PETER C. BIRD v. DANIEL B. NEWKIRK AND JAY HICKS.

*Damages—Error without prejudice.*

1. Where the damages are capable of accurate *pecuniary* estimation, exemplary damages can never be allowed; citing *Warren v. Cole*, 15 Mich. 273; *Stilson v. Gibbs*, 53 Id. 280; *Wilson v. Bowen*, 64 Id. 133.

2. It is not the duty of an appellate court to reverse a judgment for non-prejudicial error.

Error to Wayne. (Brevoort, J.) Argued November 19, 1890. Decided December 5, 1890.

Case. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Moore & Moore* (*Robert E. Frazer*, of counsel), for appellants, contended:

1. If the defendants are liable at all, they are only liable for the difference between the market value of the oil as it would have been if as represented, and its actual value; citing *Clark v. Moore*, 3 Mich. 60; *Cuddy v. Major*, 12 Id. 368; *Railroad Co. v. Burrows*, 33 Id. 14; *McGuire v. Galligan*, 57 Id. 41; *Woodworth v. Woodburn*, 20 Ill. 184; *Fleming v. Beck*, 48 Penn. St. 312.
2. Defendants are not liable for alleged loss on other oil plaintiffs had on hand at the time of the sale complained of; citing *Crain v. Petrie*, 6 Hill, 522.
3. Plaintiffs were not entitled to exemplary damages; citing *Warren v. Cole*, 15 Mich. 274.

*Edwin F. Conely*, for plaintiffs.

MORSE, J. Plaintiffs brought action in trespass on the case in the Wayne circuit court, alleging that the defendants had sold to them 100 pounds of peppermint oil, representing to them falsely that the same was good and genuine peppermint oil, when in fact it was dementholized oil, from which the active principle of good and genuine oil, to wit, menthol, had been eliminated to the knowledge of defendants. The jury returned a verdict for the plaintiffs in the sum of $350, for which they had judgment.

The case, as made by the plaintiffs, was that in 1886 and 1887, they were engaged in buying and selling peppermint oil in Wayne county, Mich.; that the defendant Newkirk hired the defendant Hicks to take about 100 pounds of dementholized oil, then belonging to Newkirk, and in his possession, to the plaintiffs, and sell it to them as good, merchantable oil at the ordinary market price, to wit, $2.10 per pound; that Hicks took the oil to plaintiffs and sold it to them, representing that it was good, genuine, peppermint oil which Hicks had raised upon his farm, and had distilled by one Vincent, of Van Buren township, in Wayne county. Plaintiffs bought the oil, relying upon these representations, paying Hicks therefor $200 in cash, and promising to pay

the balance, $14.95. This balance, however, was never paid. This oil proved to be dementholized, upon analysis. The plaintiffs claimed that they were not only damaged as far as this particular oil was concerned, but that, having a large stock of other peppermint oil on hand and for sale, when it became publicly known that they had in their possession dementholized oil, their business was greatly damaged, because they were obliged to sell their genuine oil at greatly reduced prices, as buyers would not take the same, or any part of it, without analysis, and were suspicious of all oil in their possession.

The defendants claim error on the trial in the following particulars:

1. The plaintiffs were not entitled to recover.
2. Under the declaration the plaintiffs could not recover unless they established their claim that the oil was dementholized.
3. If defendants were liable at all, they were liable only for the difference between the market value of the oil purchased of defendants as would have been, if as represented, and its actual value as it was.
4. The plaintiffs were not entitled to recover for alleged loss in the sale of other oils which they had on hand.
5. Plaintiffs were not entitled to exemplary damages.

Under the first two propositions, it is argued that there was no competent testimony showing that the oil was dementholized when it was sold to plaintiffs, the evidence being that it was distilled from weedy peppermint; that is, peppermint mixed with fireweed, marestail, and other weeds, so that the oil was "weedy" or a "little off," and defendant Newkirk preferred not to ship it east. To this import was the testimony on the part of the defense. But it was shown on the part of the plaintiffs that some of this oil was submitted to analysis, and Dr. Duffield, who analyzed it, testified that it was dementholized. This question was properly submitted to the

jury to determine, the court instructing them that if they believed that the defendant Newkirk, through the defendant Hicks, represented to and caused the plaintiffs to believe that the oil was good, genuine, peppermint oil, when in fact it was dementholized, and plaintiffs relied upon such representations in buying the oil, they were entitled to recover; but, if the oil in question was not dementholized, then the verdict must be for the defendants, no matter whether the oil was "weedy" or not; and that the burden of proof was upon the plaintiffs to establish the dementholization of the oil.

In relation to the third and fourth propositions, it is evident that the jury did not give the plaintiffs any damage for the loss suffered upon any oil, except the amount purchased of the defendant Hicks. The oil was bought in October, 1886, and $2.10 paid for it. The verdict of the jury in December, 1889, was for the plaintiffs in the sum of $350. Had the oil been good, merchantable oil, the testimony is undisputed that it might have been sold at from $2.75 to $3 per pound. The oil, as it was, was worthless. The 100 pounds at $3 per pound, with 6 per cent. interest, would amount to more than the verdict. It is true, the plaintiffs claimed that the fact becoming known that they had dementholized oil in their possession prevented the sale in that season of some 2,800 pounds of other good peppermint oil which they had on hand for sale; and that thereby they lost, as their testimony tended to show, from 50 cents to $1 per pound on this 2,800 lbs., making a loss of from $1,400 to $2,800 outside of this particular oil purchased of defendants. On the other hand, there was evidence tending to show that plaintiffs' loss upon the other oil resulted from their keeping it for higher prices, and being compelled to sell it next year at lower rates because of a fall in prices. And although the court instructed the jury that

they might allow plaintiffs' damages for the loss upon all their oil, if they found such loss was occasioned by the selling of this particular oil by defendants to them, it is plain from the verdict that the jury found with the defendants upon this issue, and did not give any damages for loss upon the oil not purchased from the defendants. We therefore find it unnecessary to inquire into the correctness of the instructions of the circuit judge in this respect.

The court, in his instructions as to damages, among other things, said:

"If you believe from the evidence that Newkirk perpetrated the fraud charged, and that he did it willfully, for the purpose of injuring the plaintiffs as rival or competitive buyers, you may add to the actual damages as above indicated some reasonable sum as exemplary or punitory damages proportionate to the maliciousness of the act."

It has been said by this Court that, where the damages are capable of pecuniary estimation, vindictive damages can never be allowed; that for any wrongful injuries where the grievance created is purely pecuniary in its nature, and is susceptible of a full and definite money compensation, it is not permissible to abandon a certain rule, which will do complete justice, for an uncertain one, that can hardly fail to do injustice. *Warren v. Cole*, 15 Mich. 273. And in *Wilson v. Bowen*, 64 Mich. 133, it is said that it is not the province of the jury, after *full* damages have been found for the plaintiff, so that he is fully *compensated* for the wrong committed by the defendant, to mulct the defendant in an additional sum, to be handed over to the plaintiff as a *punishment* for the wrong he has done to such plaintiff. See, also, *Stilson v. Gibbs*, 53 Mich 280.

There is a class of cases, such as seduction (see *Watson v. Watson*, 53 Mich. 168), where the damages are not

capable of accurate measurement by a money standard, and where they must necessarily be left to the proper discretion of the jury. In such cases "increased damages" are permitted for circumstances of aggravation in the wrong-doing, but they are not given by the law, as interpreted by this Court, in punishment of the wrong-doer, but as extra compensation to the person wronged, for the reason that the injury is considered greater because of such circumstances of aggravation, and therefore the compensation ought to be greater. Willful trespasses, assaults and batteries, libels and slanders, false imprisonment, and perhaps other actions, where the injury is in part to the feelings of the plaintiff, to his shame and humiliation, are cases where "increased" damages may be given. *Detroit Daily Post Co. v. McArthur*, 16 Mich. 447; *Welch v. Ware*, 32 Id. 77; *Elliott v. Van Buren*, 33 Id. 56; *Livingston v. Burroughs*, Id. 511; *Scripps v. Reilly*, 38 Id. 10, 25; *Ross v. Leggett*, 61 Id. 452, 453.

But this is not a case where such damages are admissible. Here the wrong was capable of accurate pecuniary measurement, and the damage to plaintiffs was simply a financial one. The motive of the defendants did not affect the wrong, and their fraud, however premeditated and willful, added nothing to any damages which the plaintiffs were entitled to recover as compensation for the wrong inflicted.

But we are not willing to reverse the judgment for this error of the trial court. As it is very plain to us from the testimony that the plaintiffs received no greater amount than was their actual loss on account of the transaction, the judgment will stand. It is not the duty of an appellate court to reverse a judgment, unless it is satisfied that an error has been committed, and that such error has done injustice, or may have been prejudicial to the appellant. In this case, as before shown, the oil pur-

chased was worthless. If it had been as represented, it would have been worth, under the testimony, about $300. Interest on this amount for three years and two months added would amount to more than the verdict of the jury. It therefore appears that nothing was added in the way of exemplary damages.

The judgment is therefore affirmed, with costs.

The other Justices concurred.