464

LOUIS J. HERDEGEN and LOUISE HERDEGEN, Plain-
tiffs and Appellants, v. ALLEN OXARART and MARTIN
OXARART, Defendants and Respondents.
No. 10398
Submitted September 11, 1962. Decided February 14, 1963.
378 P.2d 655.

Burns & Thomas, Chinook, Harry L. Burns (argued), Chinook, for appellants.

Morrison & Ettien, Havre, J. Chan Ettien (argued), Havre, for respondents.

HONORABLE L. C. GULBRANDSON, District Judge, sitting in place of MR. JUSTICE DOYLE, delivered the Opinion of the Court.

This is an appeal from a judgment for defendants in the district court of the seventeenth judicial district in and for the County of Phillips. The action arose out of the flooding of plaintiffs' land in Phillips County in the Spring of 1959, due to a sudden run-off of surface waters. The action was brought by appellants, hereinafter referred to as plaintiffs, to recover $5,000 damages for injuries to alfalfa plants, $15,-000 for injury to the land, $1,000 for erosion of dikes, and $21,000 exemplary damages.

The general area involved is drained by Beaver Creek which flows in a northeasterly direction, draining benchlands west of Beaver Creek. Running easterly to the creek are two parallel coulees, Miller Coulee, the northern-most coulee, and No Name Coulee, the next one south.

For irrigation of haying and grasslands, ranchers in the area depend on surface run-off of snow and rain waters. Generally, it is flood irrigation of the so-called "one shot" method. This is accomplished by the utilization of dikes which conduct the run-off water and diffuse and hold it on the land as long as necessary or possible.

Defendants' predecessors started using the run-off water of the aforementioned two coulees shortly after settling in the area in the 1900's. This was done by ditches and dikes which conducted the water across the land of plaintiffs' predecessors to an area along the west side of Beaver Creek. Plaintiffs' predecessors never interfered with the system. Plaintiffs took possession of their lands in 1940, and in 1951 built

a reservoir on No Name Coulee on their land. Defendants' father and predecessor, Mitchell Oxarart, then began suit over No Name waters. This resulted in an agreement which provided, among other things, for the sharing of No Name water and the incorporation of Oxarart's dike system with that of the plaintiffs'.

Plaintiffs completed their dike in 1953 tying their eastern-most dike to the Oxarart system in such a manner that plaintiffs could use water from Miller Coulee. Oxarart was to receive Miller Coulee water conducted through two gates in plaintiffs' eastern-most north-south dike, and around its south end to Oxararts' bluejoint meadows. In 1953, plaintiffs erected a shut-off dike at the north end of their system in which they installed a box which they could plug or unplug, depending on their need for Miller Coulee water, and which was intended to permit Oxarart to get enough water for his meadows.

In 1957, Oxarart changed his system and built a long dike parallel to, and lying east of, plaintiffs' east dike so that Miller Coulee water would channel between the two, out of the south end, and thence east down on to the Oxararts' lands.

The Agriculture Stabilization and Conservation office, in helping Oxarart to plan the new system, recommended a twelve-inch drain which would allow drainage of water trapped at the low point between the two long dikes, but Oxarart used a five-inch pipe he had on hand.

On March 19, 1959, a sudden rise in temperature caused the release of water in large quantities from the heavy snow cover of the previous winter. Plaintiffs alleged, and introduced evidence which tended to prove, that the run-off water from Miller Coulee flowed south between plaintiffs' east dike and defendants' long dike, constructed by defendants' predecessor in 1957, and around the south end of plaintiffs' dike westerly on to plaintiffs' land where it remained for a period sufficient to kill plaintiffs' alfalfa plants in their lower fields and damage their holding dikes. Plaintiffs de-

manded that defendants cut their dike to release the impounded water.

The defendants, in the presence of counsel for all parties, agreed to cut their dike, and authorized plaintiffs to do so, if plaintiffs would release them from liability for damage caused by the impounded waters.

Evidence was introduced which tended to prove that if the dike had been cut at this time there would have been no damage to the alfalfa plants or the land.

The dike was not cut and the water remained on plaintiffs' land until approximately June 1, 1959.

As one of their affirmative defenses, defendants alleged and introduced evidence which tended to prove that the flood waters came from No Name Coulee on plaintiffs' land and not from Miller Coulee.

Defendants pleaded three other affirmative defenses:

1. A prescriptive right to flood plaintiffs' land.

2. Estoppel based on written agreement and plaintiffs' subsequent actions.

3. Mitigation.

No motions were made to dismiss the affirmative defenses of prescriptive right and estoppel, and the court refused plaintiffs' instructions that the defenses were removed from the jury's consideration. The court likewise refused defendants' instructions on estoppel and prescription.

Plaintiffs' specifications of error, 1 through 6, involve the issue of exemplary damage. By the first three specifications of error, plaintiffs contend that the court erred in refusing to admit evidence of flooding conditions in 1960, the following year, which evidence would have shown that defendants had not taken any steps to alter their dike system. Plaintiffs contend that this, in addition to defendants' refusal to cut their dike, was a factor which showed malice. The fourth specification of error is that the court erred in granting defendants' motion to remove the question of exemplary damage

468

from the jury's consideration. The fifth and sixth specifications of error claim error by the court in refusing to instruct the jury upon the question of exemplary damage.

The sole question presented by plaintiffs' specifications of error, 1 through 6, is whether or not the trial court erred in removing the issue of exemplary damages from the case. We cannot rule that the trial court erred since plaintiffs have not been prejudiced by the removal of that issue. Here, the jury expressly found against plaintiffs on the issue of actual damages, and error, if any, would not have been prejudicial to plaintiffs. Galiger v. Hansen, 133 Mont. 34, 319 P.2d 1051; See McLain v. Pensacola Coach Corp., 152 Fla. 876, 13 So.2d 221.

Plaintiffs, though failing to move to strike or dismiss the affirmative defenses of prescription and estoppel, through their specifications of error 7 and 8, contend that the trial court erred in refusing to instruct the jury that the defenses were withdrawn from their consideration. We are aware of Smith v. Armstrong, 118 Mont. 290, 294, 166 P.2d 793, 795, wherein this court stated:

"* * * Plaintiff moved to strike from the answer of the defendant its affirmative defense based upon the doctrine of estoppel. The court denied the motion. Defendant offered no evidence in support of the separate defense of estoppel and if upon another trial defendant does not support the affirmative defense with proof it ought on motion be stricken from the pleadings or at least an instruction given to the jury to disregard that alleged affirmative defense."

The above-quoted language suggests that an affirmative defense may be removed from a jury's consideration not only by a motion to strike, but also, by appropriate instructions to the jury. Here the question is whether the trial court erred in refusing to give the requested instructions. The court did instruct the jury:

"You should take the law from the instructions of the court alone, and you should not give any weight to statements of counsel as to what the law is, except that counsel may argue and comment upon the law of the case as given in these instructions."

The court did not instruct the jury upon the defenses of estoppel and prescription. In effect, there was a withdrawal of those defenses by the court's refusal of defendants' proposed instructions on them. Although the better practice would have been to instruct the jury to disregard the defenses, it was not reversible error to refuse plaintiffs' requested instructions.

Finally, plaintiffs specify as error the denial of plaintiffs' motion for a new trial. The motion was based upon two grounds; insufficiency of the evidence to justify the verdict and that it is against the law, and error in law occurring at the trial and excepted to by plaintiffs:

In Seibel v. Byers, 136 Mont. 39, 47, 344 P.2d 129, 134, the court considered the refusal of a new trial as follows:

"Such determination by the trial court of plaintiff's motion for new trial, involving as it does the exercise of judicial discretion, may not lawfully be disturbed on review by this court unless it is clearly shown that in pursuing the course that it did in determining the motion the trial court abused its discretion. [Citing cases.]

"The rule that this court will not interfere with the trial court's exercise of its discretion is particularly applicable where, as here, questions of fact are involved, as where insufficiency of the evidence is urged as ground of the motion and it appears that the evidence was conflicting. [Citing cases.]."

Our examination of the record reveals that there is a conflict in the evidence, particularly in the evidence as to where the flood waters originated. In view of this, and finding no reversible error in law occurring at the trial, we cannot hold that

the trial court abused its discretion in refusing to grant plaintiffs' motion for a new trial.

By way of cross appeal, defendants contend that the trial court erred in striking their cost bill. The transcript indicates that service of the memorandum of costs was made by mail. Service thereof was completed when the memorandum was deposited in the post office. Section 93-8504, R.C.M. 1947, (since repealed); Davis v. Trobough, 139 Mont. 322, 363 P.2d 767. The verdict was filed on June 8, 1961. The memorandum of costs was postmarked June 13, 1961. In the computation of time the first day is excluded. Section 90-407, R.C.M. 1947. Therefore, June 13, 1961, was the fifth day and service on that day met the time requirement of section 93-8619, R.C.M. 1947.

For the foregoing reasons the judgment of the district court is affirmed as to all matters except costs. The order granting the motion to strike the cost bill is overruled and the cause is remanded to the district court to retax costs not inconsistent with his opinion.

MR. JUSTICES CASTLES, JOHN C. HARRISON, ADAIR, and THE HONORABLE E. E. FENTON, District Judge, sitting in place of MR. CHIEF JUSTICE JAMES T. HARRISON, concur.