STRATTON v JENSEN

STRATTON v ESTATE OF SCHRIER

1. Courts—Findings of Fact—Appeal and Error—Weight of Evidence—Clear Error.

An appellate court will give great weight to a trial court's findings of fact and will not substitute its judgment unless those findings were contrary to the great weight of the evidence and thus clearly erroneous.

2. Interest—Conversion—Damages—Self-Help Remedies—Unjust Enrichment.

A plaintiff should be denied an interest award on the value of goods unlawfully converted by the defendant where the plaintiff has used an illegal self-help remedy to recover those goods; where both parties are wrongdoers and are unjustly enriched by their self-help techniques, neither should profit.

3. Courts—Court of Appeals—Court Rules—Powers—Rehearing —Record—Fairness.

A post trial rehearing where necessary to determine the value of goods involved in a contract dispute where the record is confused on this issue and fairness would be better served by holding such a hearing may be ordered by the Court of Appeals under its general powers as defined in the court rules (GCR 1963, 820.1[7]).

4. Sales—Commissions—Evidence—Oral Agreements—Percentages.

A plaintiff claiming a sales commission under an oral agreement who presented no evidence of what portion of defendant's sales were attributable to him is not entitled to recover any commission on the sales.

References for Points in Headnotes
[1] 5 Am Jur 2d, Appeal and Error §§ 607, 609.
[2] 18 Am Jur 2d, Conversion §§ 96, 99–101.
[3] 22 Am Jur 2d, Damages § 324.
[4] 48 Am Jur 2d, Labor and Labor Relations § 1804.
[5] 22 Am Jur 2d, Damages § 303.

5. DAMAGES—ACTUAL DAMAGES—PUNITIVE DAMAGES—MORTGAGES—
   CONTRACTS.

   A plaintiff who demonstrated no actual damages from a defend-
   ant's purchase of his outstanding mortgage, which resulted in
   the cancellation of the mortgage consistent with the parties'
   contract, is not entitled to an award of punitive damages even
   though the defendant had improperly attempted to collect the
   mortgage payments from the plaintiff in contravention of the
   contract.

Appeal from Kalamazoo, Donald T. Anderson, J.
Submitted June 5, 1975, at Grand Rapids. (Docket
No. 21392.) Decided September 24, 1975.

Complaint by Alan W. Stratton against Frances
L. Jensen, administratrix of the estate of Harold
D. Schrier and against Pearl Grange Fruit Ex-
change, Inc., for damages for breach of contract.
Judgment for plaintiff. Defendants appeal and
plaintiff cross-appeals. Affirmed in part and re-
manded for rehearing.

*Garvey, Kreis & Silverman, P. C.* for plaintiff.

*Jacob A. Dalm, Jr.,* for defendants.

Before: McGREGOR, P. J., and D. E. HOLBROOK
and N. J. KAUFMAN, JJ.

PER CURIAM. This case began as an attempt by
the parties to contract for the sale of plaintiff's
business to defendants. This attempt produced a
written and several oral agreements which the
parties executed without advice from an attorney.
The subsequent dispute, however, involved numer-
ous attorneys, protracted litigation, an involved
opinion and a multifaceted appeal.

Prior to August, 1972, plaintiff, as a sole proprie-
tor, owned and operated Stratton Plastic Proces-
sors. Defendant Harold Schrier was the sole share-

holder, president and director of defendant Pearl Grange Fruit Exchange, Inc. (Pearl Grange). During the pendency of this appeal, Schrier died and defendant Jensen was appointed administratrix of his estate and was substituted as a party to this appeal.

On August 9, 1972, plaintiff and Schrier executed a written document entitled "Equipment Agreement". The parties to the agreement were plaintiff and P & G Plastics, a division of Pearl Grange that was being created to enter into the plastics business. Prior to the purchase, Pearl Grange was not involved in the plastics field. Under the terms of this agreement, P & G Plastics agreed to purchase plaintiff's "equipment, their parts as listed, customers and technology * * * for the sum of $78,000". The purchase price was made payable by defendants' assumption of two mortgages owed by plaintiff, one for $31,892 held by the Park Forest Bank of Illinois and the other in the amount of $3,447 held by the Bank of Blue Island, plus a twelve-month note for the difference between the purchase price and mortgage assumptions. Plaintiff claimed, and defendants denied, that the parties also entered into an oral employment agreement whereby plaintiff was given authority to make purchases on behalf of Pearl Grange.

On September 1, 1972, plaintiff began delivery of his equipment to a building owned by defendants. At that time, defendant Schrier expressed dissatisfaction with it. Schrier claimed at trial that he instructed plaintiff to take it back. Nonetheless, the equipment was installed by defendants' employees and used by defendants. Defendant paid plaintiff $5,000 additionally to help defray the cost of moving the equipment. In addition to the equip-

ment and parts, plaintiff delivered to Pearl Grange for storage a quantity of plastic material, which was being held for delivery to another firm, and a piece of machinery called a "chipper".

Subsequent to delivery of the equipment, defendants failed to execute the twelve-month note or to make payments on either of the mortgages as provided in the agreement. Instead, defendant Schrier purchased from the holder of the larger mortgage an assignment of its interest as secured creditor. Thus, when plaintiff did not pay the mortgage, Schrier took legal possession of the collateral, plaintiff's equipment, which he, in fact, already possessed.

Plaintiff sued for the balance of the purchase price, for wages claimed pursuant to the oral employment contract, for return of his inventory, for supplies allegedly purchased for defendants' benefit and for alleged damage to plaintiff's reputation and credit. Defendants counter-claimed alleging misrepresentation by plaintiff as to the value and condition of the equipment sold, loss of profits, loss of $20,000 because of plaintiff's use of defendants' storage space, alleged conversion of certain plastic by plaintiff, alleged damage to credit in being sued for debts owed by plaintiff and for loss of business alleged to have been caused by plaintiff.

After a non-jury trial, in a well-written and concise opinion, covering all questions, the Kalamazoo County Circuit Court directed defendants to hold the plaintiff harmless on any remaining indebtedness on the two mortgages. The court awarded to plaintiff damages in the amount of $44,353.90 with interest, representing the difference between the mortgages purchased by defendant Schrier and the $78,000 purchase price con-

tained in the equipment agreement. Judgment was further entered against defendants for $3,150.24 for additional expenses of the plaintiff in moving the equipment. Judgment was denied plaintiff for any salaries or commissions, but judgment in the amount of $438.83 was granted to plaintiff for expenses. The court ordered defendants to pay certain invoices for supplies and to deliver to plaintiff the inventory owned by plaintiff and held by defendants, or, in lieu thereof, to pay damages not to exceed $16,000.

Judgment was further granted in the amount of $750, determined by the court to be the value of 30,000 pounds of plaintiff's plastic which the court found defendants had sold. The court also required defendants to pay in the amount of $542.85 for plastics sold by plaintiff to another company, Poly-Mar Plastics. Defendants were also ordered to deliver the chipper to plaintiff, or in the alternative to pay the sum of $2,800. Judgment was further granted to plaintiff for the sum of $685.88 for supplies belonging to plaintiff and delivered to defendants.

Defendant appealed and plaintiff filed a cross-appeal. On appeal, defendants raise nine claims of error. Of these, all but two challenge the trial court's findings of fact. In such cases, an appellate court will give great weight to the trial court's findings and will not substitute its judgment unless the findings were contrary to the great weight of the evidence and thus "clearly erroneous". GCR 1963, 517.1, *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195; 220 NW2d 664 (1974), *Kurrle v Walker,* 56 Mich App 406; 224 NW2d 99 (1974). Having reviewed the record, we hold that the challenged findings were supported by the evidence presented.

In addition, defendants contend that the trial court erred by making an award to plaintiff in compensation for some of plaintiff's plastic which defendants had sold despite the fact that plaintiff used an illegal self-help remedy and converted some of defendants' plastic to his own use.

According to the evidence, 10,340 lbs. of plaintiff's plastic which had already been processed by plaintiff was delivered to defendants' plant. This plastic had already been sold to another company, Poly-Mar. It was not part of the agreement between the instant parties.

Apparently defendants went ahead and sold this plastic to another. Plaintiff then shipped an equivalent amount of defendants' plastic to Poly-Mar at a later date. Both parties have billed Poly-Mar, who refuses to pay until it is established which of the instant parties is entitled to payment. The court awarded judgment to the plaintiff for the amount of the invoice plus interest while at the same time requiring defendants to collect from Poly-Mar.

We agree that plaintiff should not be rewarded for his actions. However, we find that defendants should not be rewarded for their apparent conversion of plaintiff's plastic. Since both parties were wrongdoers and were unjustly enriched by their self-help techniques, neither should profit. *Weller v Weller,* 344 Mich 614; 75 NW2d 34 (1956). Therefore, we affirm the court's order as to this issue but vacate the requirement that defendants pay interest on the $542.85 awarded plaintiff on this claim. In this way, the parties will be left with the same inventory and capital as they would have had if plaintiff had originally been able to sell his plastic to Poly-Mar.

The second appellate claim of defendants which

we consider is that the trial court erred by awarding $16,000 to plaintiff for inventory stored and sold by defendants and found to be plaintiff's property. Defendants argue that there was no testimony on which this award could properly have been based. A review of the record on this issue leads only to confusion. The trial court's original judgment provided that, if the parties could not agree on the inventory value, the court would retain jurisdiction of the case and would hold a post-trial hearing, hear evidence and determine its value. Only plaintiff's attorney appeared at the hearing. Plaintiff's attorney indicated to the court that an associate of defendants' attorney had approved the settlement of judgment prepared by plaintiff. This settlement set the inventory value at $16,000. One month later, defendants' attorney moved to have this judgment set aside. He claimed that he had not approved the settlement and that he had asked his associate to appear, but his associate had, instead, merely approved plaintiff's settlement. Defendants' attorney further offered to fulfill the order of the court and return plaintiff's inventory. The trial court denied defendants' motion to set the judgment aside.

We find that defendants did not wilfully fail to appear and that defendants made a good-faith offer of settlement when they did appear. We believe that fairness will be better served by giving the parties a hearing at which both sides may present evidence or offers of settlement. Pursuant to GCR 1963, 820.1(7) we order that this issue alone be remanded to the trial court for such a hearing, one which shall be transcribed.

On cross-appeal, plaintiff raises two claims of error. First, plaintiff contends that the court erroneously construed the terms of the oral employ-

ment agreement between plaintiff and defendants. Defendants argue that the oral agreement never existed.

The court's finding as to the existence of the agreement is supported by the evidence. The contract provided that plaintiff would receive a 7 percent commission on the total gross sales generated by him. The court found that plaintiff could earn a commission only on sales made to new customers, not on sales to customers to whom plaintiff sold prior to his deal with defendants. The court based its holding on the fact that, by the terms of the written contract, plaintiff sold his "customers" to defendants.

Plaintiff argues that, because the court found in plaintiff's favor as to the existence of the employment contract, it, perforce, should then have found the terms as plaintiff stated them. While the court's broad equitable powers render this argument without merit, we find ample evidence in the record to support plaintiff's argument. When the parties used the term "customers", they may have meant, in lay terms, "goodwill".

We need not, however, resolve this claim. Our review of the record convinces us that plaintiff never demonstrated what portion of defendants' sales were attributable to plaintiff. Plaintiff merely claimed that he should get 7 percent of defendants' total sales. Plaintiff is therefore not entitled to recover any commission on these sales.

We find without merit plaintiff's second appellate claim, that he should get punitive damages for defendants' use of plaintiff's equipment after defendants had obtained it by purchasing the Bank of Park Forest mortgage. Plaintiff was not damaged by defendants' action. Defendants' purchase of the mortgage resulted in its cancellation, con-

sistent with the parties' contract. Plaintiff could not receive punitive damages since he demonstrated no actual damage. *Durfee v Newkirk,* 83 Mich 522; 47 NW 351 (1890).

Remanded, as directed, for a hearing to determine the inventory dispute. Affirmed as to all other issues. No costs, neither party having prevailed in full. We do not retain jurisdiction.