297 S.E.2d 872

**Arthur A. WELLS, et al.**

v.

**Robert Allen SMITH, et al, etc.**

**No. 15243.**

Supreme Court of Appeals of
West Virginia.

Nov. 18, 1982.

---

William T. Fahey, Raymond A. Hinerman, Barnes, Watson, Cuomo & Fahey, Weirton, for appellants.

Leonard Z. Alpert, Weirton, for appellees.

McGRAW, Justice:

Arthur and Roberta Wells appeal two orders of the Circuit Court of Hancock County, one granting the motion of the appellee, John Settimio, to set aside a verdict awarding $10,000 punitive damages to the appellants, and one denying the appellants' motion for a new trial and for judgment notwithstanding the verdict. The appellants contend that the verdict against Settimio was improperly struck by the trial court. They pray that the judgment against Settimio be reinstated, or in the alternative, that they be granted a new trial on the issue of Settimio's liability. We find that the $10,000 verdict for punitive damages was improperly struck by the trial court. Because of our ruling on this point we do not address the appellants' other assignments of error.[1]

This litigation originated in a civil action brought by the appellants to recover damages incurred as the result of the theft of more than $200,000 worth of jewelry and rare coins. The evidence presented by the appellants at trial shows that in August, 1977, three juveniles removed a wall safe from the appellants' home. Appellee Gary R. Gillespie, an uncle of one of the juveniles, was enlisted to open the safe after the juveniles' own attempts to open it were unsuccessful. Gillespie divided the jewelry and coins he found inside the safe between one of the juveniles and himself.

Gillespie subsequently contacted appellee Louis Pilotti to arrange a sale of his share of the jewelry. Pilotti arranged a meeting between Gillespie and appellee Eddie Klein, a wholesale jewelry distributor from Pittsburgh. The jewelry was delivered to Klein at Jo-Jon's Restaurant, a sandwich shop and discount store owned and operated by appellee John Sittimio. Pilotti, Klein and Sittimio were all former acquaintances and occasional business associates. Klein's payment of $11,500 for the stolen merchandise was delivered to Gillespie by Pilotti at the Cactus Bar, Pilotti's place of business. Settimio was present both at the meeting at Jo-Jon's Restaurant and at the Cactus Bar when the payment was delivered. Pilotti received $1500 of the $11,500 from Gillespie for arranging the deal with Klein.

The investigation of the theft from the appellants' home resulted in the arrest of Gillespie on charges of receiving stolen goods.[2] After his arrest, Gillespie agreed to cooperate with the authorities in an attempt to retrieve the stolen merchandise. He subsequently contacted Pilotti to arrange an exchange of the jewelry for $15,000 in "ransom" money which the appellants agreed to supply. Pilotti's fee for arranging the exchange was $2000. Deputy Joseph Geiss of the Hancock County Sheriff's Department was chosen by the authorities to deliver the ransom money.

Deputy Geiss met with Pilotti and Settimio at a restaurant in southwestern Pennsylvania. Settimio claims that Pilotti requested that he come along on the ransom attempt in order to verify that the jewelry they received was authentic, and that he

---

1. The appellants' other assignments of error are: (1) the trial court erred in denying admission of a prior judicial statement made by appellee Gary R. Gillespie; (2) the court erred by not imposing sanctions on those appellees who invoked their privilege against self-incrimination during discovery proceedings, and (3) the court erred in refusing to grant a new trial against appellee Settimio.

2. Gillespie subsequently entered a guilty plea to this charge. Although all three juveniles were arrested in connection with the theft, Gillespie's conviction represents the sole criminal prosecution resulting from the police investigation.

was to receive $1000 for his services. Settimio further claims he was qualified for this job because he had previous experience valuing precious stones in connection with his discount store. At the meeting, Pilotti informed Deputy Geiss that the exchange was to be made with an unnamed person in Pittsburgh. Using Settimio's car, the three began their trip to Pittsburgh. The ransom attempt was aborted, however, when the car headed into downtown Pittsburgh and concern for the safety of Deputy Geiss prompted Hancock County Sheriff Ronald Donell, who along with West Virginia and Pennsylvania State Police had been following Geiss, to order Settimio's car stopped. Pilotti and Settimio were arrested at this time and charged with criminal conspiracy. These charges were later dropped by Pennsylvania authorities.

The appellants' complaint named as defendants the three juveniles, their parents, Gillespie, Pilotti, Klein, Settimio and several other individuals. This appeal is concerned only with appellee Settimio. The jury returned verdicts of $155,000 compensatory and $10,000 each punitive damages against the juveniles and Gillespie, and $150,000 compensatory and $10,000 each punitive damages against Pilotti and Klein. The jury returned a general verdict in favor of appellee Settimio, but assessed him with $10,000 in punitive damages. Upon hearing the verdict, counsel for the appellants requested that the jury be sent back for deliberations due to the inconsistencies in its disposition of the claims against Settimio. This request was denied by the trial court and the jury dismissed. The judge subsequently struck the $10,000 verdict against Settimio upon motion of defense counsel.

The appellee contends that the ruling by the trial court is correct in light of the established rule in West Virginia that "[a] finding of compensatory damages by a jury is an indispensable predicate to a finding of exemplary or punitive damages, and damages awarded by way of punishment must bear a reasonable proportion to compensatory damages so found." Syllabus Point 3, *Toler v. Cassinelli*, 129 W.Va. 591, 41 S.E.2d 672 (1946); *see also Spencer v. Ste-*

*inbrecher*, 152 W.Va. 490, 164 S.E.2d 710 (1968); *Raines v. Faulkner*, 131 W.Va. 10, 48 S.E.2d 393 (1947); *Ennis v. Brawley*, 129 W.Va. 621, 41 S.E.2d 680 (1946). The appellee argues that the general verdict in favor of Settimio below should be interpreted as a jury finding that he was not a participant in the events causing the appellants' loss, and that therefore he was found not liable for compensatory damages, precluding an award of punitive damages.

The appellants, on the other hand, argue that the rule stated in *Toler* does not address the factual and legal circumstances of a case of this nature where substantial actual damages are proven and assessed against codefendants. They urge the Court to adopt a rule to the effect that where a claim for actual damages is sufficiently pleaded and proved, the failure of the jury to allow compensatory damages does not require an award of exemplary or punitive damages to be set aside. We find merit in the appellants' argument.

Damages awarded to punish a wrongdoer for a wilful, wanton, reckless or malicious act and to deter others from similar conduct have a long history in Anglo-American jurisprudence. The English case generally cited as establishing such awards is *Huckle v. Money*, 2 Wils. 205, 95 Eng.Rep. 768 (1763), an action for trespass, assault and imprisonment. In *Huckle* the court refused a motion for a new trial on the ground of excessive damages, reasoning that while the injury done to the plaintiff may have been small, the nature of the defendant's conduct justified an award of "exemplary damages." *See* 1 T. Sedgwick, *A Treatise on the Measure of Damages* § 350 (9th ed. 1913). It has been stated, however, that the court in *Huckle* did not establish a new rule of damages, but rather simply adhered to the ancient English principle of affording the jury wide discretion in the determination of the amount of damages in tort cases. 1 T. Sedgwick, *supra*, at § 349. Thus, well into the twentieth century, it could be said: "In England, where exemplary damages had their origin, it is still not entirely clear whether the accepted theory is that they are a distinct

and strictly punitive element of the recovery, or they are merely a swollen or 'aggravated' allowance of compensatory damages permitted in cases of outrage." C. McCormick, *Handbook on the Law of Damages* § 78 (1935) (footnote omitted).

Whatever the rule in England, in America punitive damages became an element distinct from compensatory damages. C. McCormick, *supra; see also* 1 T. Sedwick, *supra*, at 351–352; K. Redden, *Punitive Damages* § 2.3 (1980). In the United States, exemplary or punitive damages are generally defined as:

> damages which are given as an enhancement of compensatory damages because of the wanton, reckless, malicious, or oppressive character of the acts complained of. Such damages go beyond the compensatory damages suffered in the case; they are allowed as a punishment of the defendant and as a deterrent to others.

22 Am.Jur.2d, *Damages* § 236 (1965) (footnotes omitted).

The great majority of American jurisdictions permit the recovery of punitive damages in some form. *See* C. McCormick, *supra;* K. Redden, *supra*, at § 2.1; 2 J. Sutherland, *A Treatise on the Law of Damages* §§ 391–393 (4th ed. 1916); W. Prosser, *Handbook of the Law of Torts* § 2 (4th ed. 1971). However, it is widely held that there is no cause of action for punitive damages alone. *See* 22 Am.Jur.2d, *Damages* § 241 (1965); *Annot.*, 17 A.L.R.2d 527 (1951). Normally, such a holding implies only that the sufficiency of the plaintiff's complaint and proof of his cause of action are to be determined independently of the claim for punitive damages. *See* 22 Am. Jur.2d, *Damages* § 241 (1965). Nonetheless, some courts have interpreted the rule in a restrictive manner, holding that the jury must actually award the plaintiff compensatory damages before punitive damages may be awarded,[3] although some courts require only an award of nominal compensatory damages.[4] An apparent majority of jurisdictions, however, require only that the plaintiff establish a valid cause of action for compensatory damages.[5] In these jurisdictions, "[i]t would seem that once a plaintiff has shown a valid cause of action to exist for compensatory damages he should be able to obtain punitive damages even if the jury for some reason fails to award him compensatory damages." K. Redden, *supra*, at § 3.4(c)(4). *See* C. McCormick, *supra*, § 83.

In West Virginia the rule permitting punitive damages as a means of punishing the defendant for egregious conduct was origi-

**3.** *See Edmond v. Fairfield Sunrise Village, Inc.*, 132 Ariz. 142, 644 P.2d 296 (App.1982); *Williams v. Carr*, 263 Ark. 326, 565 S.W.2d 400 (1978); *Daiss v. Woodbury*, 163 Ga.App. 88, 293 S.E.2d 876 (1982); *Lynn v. Taylor*, 7 Kan.App.2d 369, 642 P.2d 131 (1982); *Mississippi Power Co. v. Jones*, 369 So.2d 1381 (Miss.1979); *Weldon v. Town Properties, Inc.*, 633 S.W.2d 196 (Mo.App. 1982); *City of Reno v. Silver State Flying Service, Inc.*, 84 Nev. 170, 438 P.2d 257 (1968); *Davidson Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App.2d 177, 376 N.E.2d 965 (1977); *Barnes v. McKinney*, 589 P.2d 698 (Okl.App.1978); *Carroway v. Johnson*, 245 S.C. 200, 139 S.E.2d 908 (1965); *O'Brien v. Snow*, 215 Va. 403, 210 S.E.2d 165 (1974). *See also Enright v. Groves*, 39 Colo. App. 39, 560 P.2d 851 (1977); *Riebe v. Riebe*, 252 N.W.2d 175 (N.D.1977).

**4.** *See Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916 (Ala.1981); *Lawrence v. Risen*, 598 S.W.2d 474 (Ky.App.1980); *Rispoli v. Jackson*, 51 Md.App. 606, 445 A.2d 349 (1982).

**5.** *See Stinson v. Feminist Women's Health Center, Inc.*, 416 So.2d 1183 (Fla.App.1982); *Flor-sheim v. Travelers Indem. Co.*, 75 Ill.App.3d 298, 30 Ill.Dec. 876, 393 N.E.2d 1223 (1979); *Hahn v. Ford Motor Co., Inc.*, 434 N.E.2d 943 (Ind.App. 1982); *Kennedy v. Thomsen*, 320 N.W.2d 657 (Iowa App.1982); *Stratton v. Jensen*, 64 Mich. App. 602, 236 N.W.2d 527 (1975); *Herdegen v. Oxarart*, 141 Mont. 464, 378 P.2d 655 (1963); *Singer Shop-Rite, Inc. v. Rangel*, 174 N.J.Super. 442, 416 A.2d 965 (1980); *Trigg v. Allemand*, 95 N.M. 128, 619 P.2d 573 (App.1980); *Shugar v. Guill*, 304 N.C. 332, 283 S.E.2d 507 (1981); *Belleville v. Davis*, 262 Or. 387, 498 P.2d 744 (1972); *Schubach v. Silver*, 9 Pa.Cmwlth. 152, 305 A.2d 896 (1973); *Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241 (Tenn.1977); *Bishop v. Geno Designs, Inc.*, 631 S.W.2d 581 (Tex.App. 1982); *Nash v. Craigco, Inc.*, 585 P.2d 775 (Utah 1978); *Allard v. Ford Motor Credit Co.*, 139 Vt. 162, 422 A.2d 940 (1980); *Bachand v. Connecticut General Life Ins. Co.*, 101 Wis.2d 617, 305 N.W.2d 149 (Wis.App.1981). *See also Franklin Inv. Co., Inc. v. Smith*, 383 A.2d 355 (D.C.App. 1978); *Livingston v. Utah-Colorado Land & Live Stock Co.*, 106 Colo. 278, 103 P.2d 684 (1940); *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551 (1969).

nally repudiated in *Pegram v. Stortz*, 31 W.Va. 220, 6 S.E. 485 (1885). The Court in *Pegram* held, after a full discussion and review of authorities, that damages rendered as a punishment of the defendant were never recoverable in a civil case. The Court distinguished "exemplary" damages from punitive damages, interpreting the former term to mean merely compensation for mental anguish and other like "indeterminate" damages, and not additional damages given as punishment. Exemplary damages were recoverable, but they were distinctly held to be compensatory.[6] *Pegram v. Stortz, supra; see also Beck v. Thomson*, 31 W.Va. 459, 7 S.E. 447 (1888); W. Hale, *Handbook on the Law of Damages* at 206 (1896).

■ The view expressed in *Pegram v. Stortz, supra*, was overruled in *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895),[7] an action for damages brought under West Virginia's dram shop act. 1887 W.Va. Acts ch. 29. *See* Comment, *Vendor's Liability for Damages by Intoxicated Persons*, 74 W.Va.L.Rev. 408 (1972). In *Mayer* the Court approved the general rule which recognizes that punitive or exemplary damages are properly awarded in actions of tort "if the defendant has acted wantonly or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations . . . ." 40 W.Va. at 249–250, 22 S.E. at 59, *quoting Lake Shore & M.S. Ry. Co. v. Prentice*, 147 U.S. 101, 107, 13 Sup.Ct. 261, 263, 37 L.Ed. 97 (1893). Syllabus points one and four of *Mayer* provide:

1. The common law definition of the term "exemplary damages" is damages inflicted by way of punishment upon a wrongdoer as a warning to him and others to prevent a repetition or commission of similar wrongs.

4. In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive or vindictive damages; these terms being synonymous.

Subsequent to *Mayer*, numerous West Virginia cases have expounded upon when punitive damages are available to plaintiffs, often in contradictory or confusing pronouncements. *See, e.g., Claiborne v. Chesapeake & O. Ry. Co.*, 46 W.Va. 363, 33 S.E. 262 (1899); *Allen v. Lopinsky*, 81 W.Va. 13, 94 S.E. 369 (1917); *Hess v. Marinari*, 81 W.Va. 500, 94 S.E. 968 (1918); *Marcuchi v. Norfolk & W. Ry. Co.*, 81 W.Va. 548, 94 S.E. 979 (1918); *Goodman v. Klein*, 87 W.Va. 292, 300, 104 S.E. 726 (1920).

In *Pennington v. Gillaspie*, 66 W.Va. 643, 658, 66 S.E. 1009 (1910), the Court approved the idea that the punitive damages must bear a reasonable relation to the actual damages:

The amount of . . . actual damages depend on the evidence, not upon the mere caprice or imagination of the jury. . . . The same is true also as to exemplary damages, for we think such damages should bear some reasonable proportion to the actual damage done else they would be unreasonable and excessive, evincing partiality and prejudice on the part of the jury, so as to justify the court in setting the verdict aside.[8]

---

6. The Court dismissed dicta in several earlier West Virginia decisions which arguably implied that punitive damages may be given. *See Sweeney v. Baker*, 13 W.Va. 158 (1878); *Vinal v. Core*, 18 W.Va. 1 (1881); *Ogg v. Murdock*, 25 W.Va. 139 (1884); *Downey v. Railway Co.*, 28 W.Va. 732 (1886). *Pegram v. Stortz*, 31 W.Va. at 300–306, 6 S.E. at 528–532.

7. Professor Hale describes this case as "an elaborate opinion which relies principally on Scriptural authority." W. Hale, *Handbook on the Law of Damages* at 206 (1896). Justices Brannon, Holt and English disavowed the theological basis of the decision in a concurring note. *Mayer v. Frobe, supra*.

8. The Court in *Pennington* cites *Stevens v. Friedman*, 58 W.Va. 78, 51 S.E. 132 (1905), on this point. In *Stevens* the Court, after repeating the rule laid down in *Mayer v. Frobe, supra*, declined to set aside a verdict including punitive damages on the grounds that it was excessive. The Court reasoned that, as a general rule, the jury has a wide discretion in determining the amount of damages, and held that a jury award of damages will be set aside as excessive only

66 W.Va. at 659, 66 S.E. at 1015 (footnote added). *Accord, Hess v. Marinari, supra.*

The holding in *Pennington* was further explained in *Pendleton v. Norfolk & W. Ry. Co.,* 82 W.Va. 270, 95 S.E. 941 (1918), where it was stated that "exemplary damages should bear some reasonable proportion to the actual damages sustained, and what we mean by this expression is that the character of the injury inflicted should in some degree be considered by the jury in measuring the punishment to be meted out to the defendants." 82 W.Va. at 277, 95 S.E. at 944.

The "reasonable relation" rule approved in *Pennington v. Gillaspie, supra,* was relied on by the Court in *Newman v. Robson & Prichard,* 86 W.Va. 681, 104 S.E. 127 (1920), when it held that "punitive damages are proper only where compensatory damages are allowable, and they must bear some reasonable proportion to the actual damages sustained." 86 W.Va. at 685, 104 S.E. at 128. This statement of the rule reflects the widely held view that a cause of action for punitive damages does not exist independently of a cause of action for compensatory or actual damages, but that the ability of the plaintiff to recover punitive damages is predicated only on the plaintiff's proof establishing his right to recover actual damages, not on the return of a verdict therefor. *See* K. Redden, *Punitive Damages* §§ 3.4(B) and 3.4(C)(4) (1980); 22 Am.Jur.2d, *Damages* § 241 (1965).

However, in *Toler v. Cassinelli,* 129 W.Va. 591, 41 S.E.2d 672 (1946), the Court interpreted the rule stated in *Newman v. Robson & Prichard, supra,* as requiring a finding of compensatory damages as a necessary predicate for an award of punitive damages, and held that "[i]n the absence of an award of compensatory damages, an award of punitive damages may be taken as an indication that the jury was actuated by passion, prejudice and improper motives in making such finding." 129 W.Va. at 601, 41 S.E.2d at 679. Subsequent West Virginia decisions have followed this line. *E.g., Ennis v. Brawley,* 129 W.Va. 621, 41 S.E.2d 680 (1946); *Raines v. Faulkner,* 131 W.Va. 10, 48 S.E.2d 393 (1947); *Spencer v. Steinbrecher,* 152 W.Va. 490, 164 S.E.2d 710 (1968); *see also Addair v. Huffman,* 156 W.Va. 592, 195 S.E.2d 739 (1973); *Hensley v. Erie Ins. Co.,* 168 W.Va. 172, 283 S.E.2d 227 (1981).

The "reasonable relation" rule has been the subject of much criticism over the years. The thrust of the criticism is that the rule thwarts the punishment purpose of punitive damages in cases where the defendant's conduct has been egregious but where the plaintiff has suffered indeterminate or nominal damages. This discourages the plaintiff from bringing suit and deprives the public from the deterrence of wanton acts.[9]

■ Our recent cases disclose a trend away from strict adherence to the "reasonable relation" rule. For example, in *Leach v. Biscayne Oil and Gas Co.,* 169 W.Va. 624, 289 S.E.2d 197 (1982), although we reiterated the proposition that punitive or exemplary damages must bear a reasonable proportion to compensatory damages, we also recognized the amount of actual damages cannot be the sole criterion for the assessment of punitive damages, and therefore that:

[i]n assessing [punitive] damages, the trier of fact should take into consideration all of the circumstances surrounding the particular occurrence including the nature of the wrongdoing, the extent of

when "the amount is so out of the way as to evince passion, prejudice, partiality, or corruption in the jury." 58 W.Va. at 85, 51 S.E. at 135.

**9.** K. Redden, *supra* at § 3.6(C); *see also* Morris, *Punitive Damages in Tort Cases,* 49 Harv.L.Rev. 1173 (1931); Note, *The Reasonable Relation Rule,* 9 Pac.L.J. 823 (1978); Comment, *Necessity of Actual Damages to Support Awards of Exemplary Damages,* 16 Minn.L.Rev. 438 (1932); Martin, *The Relation of Exemplary Damages to Compensatory Damages,* 22 Tex.L.Rev. 235 (1944); Note, *No Award of Exemplary Damages Without a Recovery of Actual Damages,* 3 Baylor L.Rev. 591 (1951); Note, *Proportion Between Compensatory and Exemplary Damages,* 7 Rutgers L.Rev. 414 (1953); Comment, *Punitive Damages May Be Awarded Without Compensatory Damages Where Injury Is Shown,* 43 Va.L. Rev. 105 (1957); Walter, *The Reasonable Relation Rule Between Exemplary and Actual Damages in Texas,* 16 Hous.L.Rev. 181 (1972).

harm inflicted, the intent of the party committing the act, the wealth of the perpetrator, as well as any mitigating circumstances ....

169 W.Va. at 630, 289 S.E.2d at 201, *quoting Leimgruber v. Claridge Associates, Ltd.*, 73 N.J. 450, 456, 375 A.2d 652, 655–656 (1977). *See also Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551 (1969). We have also recognized that from a plaintiff's standpoint, punitive damages, in addition to serving their traditional purposes of punishment and deterrence, may be viewed as additional compensation for egregious conduct that has been inflicted on the injured party. *Hensley v. Erie Insurance Co., supra.* In a related vein, we have held that a proper consideration in the assessment of damages is the annoyance and inconvenience to the plaintiff caused by the defendant's wrongful conduct. *See Jarrett v. E.L. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362 (1977); *Addair v. Majestic Petroleum Co., Inc.*, 160 W.Va. 105, 232 S.E.2d 821 (1977).

Moreover, in *Mauck v. City of Martinsburg*, 167 W.Va. 332, 280 S.E.2d 216 (1981), this Court held that our insulting words statute, W.Va.Code § 55–7–2 (1981 Replacement Vol.), authorizes a cause of action without the proof of actual damages normally required in defamation cases. *See* W. Prosser, *supra*, at § 112. Since actual damages ordinarily must be proven in a defamation case, damages returned by the jury in an action brought under W.Va. Code § 55–7–2 without proof of actual damages will be necessarily punitive in nature. Thus, we have recognized that, at least in the instance of a cause of action founded on W.Va.Code § 55–7–2, an independent cause of action for punitive damages exists in West Virginia as a device to keep the public peace.

Furthermore, this Court has recognized that a cause of action for the tort of outrageous conduct exists in this jurisdiction and that this cause of action permits the recovery of damages for emotional distress without proof of physical trauma where the distress arises out of extreme and outrageous conduct intentionally or recklessly caused by the defendant. *See Harless v. First Nat'l Bank In Fairmont*, 169 W.Va.

673, 289 S.E.2d 692 (1982). Damages awarded for the tort of outrageous conduct are essentially punitive damages. *Id.*, 169 W.Va. at 683, 289 S.E.2d at 702.

Moreover, one of the theories of the cause of action authorized by our Workmen's Compensation Act, *see* W.Va.Code § 23–4–2 (1981 Replacement Vol.), in which an injured employee may seek to hold liable his employer for damages where the employer commits an intentional tort or engages in wilful, wanton or reckless misconduct, *see Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), is that employers who are guilty of such conduct ought to be punished. Therefore, the action authorized by W.Va.Code § 23–4–2 is fundamentally a suit for punitive damages granted by the Legislature to punish the employer for his egregious conduct.

The all embracing scope of the holding in *Toler v. Cassinelli, supra*, that an award of compensatory damages is a necessary predicate to an award of punitive damages, has been weakened by our more recent cases which recognize that the propriety of an award of punitive damages should not be solely dependent upon the return of a verdict for compensatory damages. Additional support for this view can be found in the West Virginia Constitution which provides that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law ...." W.Va. Const. art. III, § 17. Where the plaintiff's injury is incapable of precise measurement, the denial of punitive damages is tantamount to the denial of a remedy.

■ Furthermore, as demonstrated by the facts of this case, criminal conduct warranting punishment often escapes the notice or interest of the public prosecutor. Citizens faced with an under-zealous prosecutor should not be left without avenue for redress of injuries, particularly in light of our case law which recognizes that punitive damages serve to vindicate the victims of the defendant's wrongful conduct and provide a substitute for personal revenge. *See Harless v. First Nat'l Bank In Fair-*

*mont, supra;* Hensley v. Erie Insurance Co., 168 W.Va. 172, 283 S.E.2d 227 (1981). It should also be recognized that beyond the personal vindication of the plaintiff, punitive damages also serve the interests of society. This concept is inherent in the deterrent function of punitive damages. Moreover, beyond deterrence, punitive damages also serve to vindicate societal interests. And this is especially true in a case such as this where the tortious act of the defendant rises to the level of criminal conduct which has gone unprosecuted.

■ It has been long established in West Virginia that, as a general rule, an award of damages by a jury should not be lightly disregarded. *See Leach v. Biscayne Oil and Gas Co., Inc., supra; Addair v. Majestic Petroleum Co., Inc., supra; Davis v. Chesapeake & O. Ry. Co.,* 61 W.Va. 246, 56 S.E. 400 (1907); *Stevens v. Friedman,* 58 W.Va. 78, 51 S.E. 132 (1905); *Mayer v. Frobe, supra; see generally McDonald v. Beneficial Standard Life Ins. Co.,* 160 W.Va. 396, 235 S.E.2d 367 (1977); *State v. Carroll,* 150 W.Va. 765, 149 S.E.2d 309 (1966). We therefore believe that where the jury is properly instructed on the issue of damages, the failure to return an award for compensatory damages should not of itself preclude a punitive award, provided there is evidence showing an injury to the plaintiff caused by the egregious and tortious conduct of the defendant.

■ The power of a court to set aside an award of punitive damages is the same power, and is exercised upon the same principles, as in any case of excessive damages. 1 T. Sedgewick, *supra,* at § 388. Thus a decision by the trial court regarding the excessiveness of the punitive award returned by the jury should flow from an overall appraisal of the circumstances of the case, *see Leach v. Biscayne Oil and Gas Co., Inc., supra,* with the realization that the degree of punishment to be inflicted on the wrongdoer is peculiarly within the province of the jury. *See* C. McCormick, *supra,* at § 84. Only where the award of punitive damages has no foundation in the evidence so as to evince passion, prejudice or corruption in the jury should

the award be set aside as excessive. *See Stevens v. Friedman, supra.*

■ The appellants alleged in their complaint that appellees Pilotti, Klein and Settimio were participants in a conspiracy to deprive the appellants of their property. Consistent with this theory, the appellants tendered an instruction providing that "the effect of [a] civil conspiracy is to make what was done by one or more of the conspirators the act of all of them ...." Although inartfully worded, this instruction is basically a correct statement of law. *See, e.g., Waddey Co. v. Richmond Typographical Union,* 105 Va. 188, 53 S.E. 273 (1906); *see also* 16 Am.Jur.2d, *Conspiracy* § 56 (1979). However, the trial court rejected the tendered instruction as not applicable under the evidence. We agree with the appellants that the trial court erred in rejecting the instruction on this ground. It is well settled in West Virginia that "[w]here in a trial by jury there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so." Syllabus Point 3, *Sayre v. Stevens Excavating Co.,* 163 W.Va. 324, 256 S.E.2d 571 (1979). It is also established that only slight evidence is required to support an instruction. *King v. Bittinger,* 160 W.Va. 129, 231 S.E.2d 239 (1976). The evidence presented by the appellants below was sufficient to support the requested instruction. Thus, the trial court's failure to give an instruction on the appellants' theory of conspiracy is error warranting reversal and a new trial. However, the appellants request a new trial only in the event that the $10,-000 verdict for punitive damages against Settimio is not sustained. Because we find that the verdict for punitive damages was improperly struck, we decline to order a new trial against appellee Settimio.

■ The appellants' evidence implicates Settimio, along with Pilotti and Klein, in a scheme to dispose of the jewelry stolen from the appellants' home. Indeed, had the jury been properly instructed on the appellants' conspiracy theory they may well have returned a verdict for compensa-

tory damages against Settimio by virtue of the evidence of his participation in the conspiracy. In these circumstances we believe that proof and assessment of actual damages against Pilotti and Klein, when viewed in light of the evidence showing Settimio's involvement, is an adequate basis for an award of punitive damages against Settimio.

 Where there is evidence implicating the defendant as an active participant in a tortious plan or scheme which deliberately disregards the rights of others, and the jury returns compensatory damages against some of those involved in the scheme, the failure of the jury to return an award of compensatory damages against a particular defendant will not of itself allow that defendant to escape liability for punitive damages assessed against him.[10] We therefore decline to view the failure to return compensatory damages against Settimio as an exoneration by the jury. Rather, under the totality of the circumstances we find the award of punitive damages is an indication by the jury that they believed Settimio to be a culpable party whose wilful disregard of the appellants' rights warranted punishment.

The facts of this case do not require us to address the issue of whether an independent cause of action lies for punitive damages, although our holdings in *Harless v. First Nat'l Bank In Fairmont, supra,* and *Mauck v. City of Martinsburg, supra,* point in that direction. We find that under the evidence presented below, the jury's failure to return an award of compensatory damages against Settimio does not relieve him from liability for the award of punitive damages the jury did return.

For the foregoing reasons the order of the Circuit Court of Hancock County granting appellee Settimio's motion to set aside the verdict is reversed. This case is remanded with directions that the verdict for

punitive damages against appellee Settimio be reinstated.

Remanded with directions.

---

**10.** The situation presented by this case is somewhat analogous to that in *Addair v. Huffman,* 156 W.Va. 592, 195 S.E.2d 739 (1973), where we held that proof of actual malice by the defendant towards the injured party is not necessary to support an award of punitive damages in a case where the actions of more than one individual are the cause of the injury, provided the jury has sufficient evidence from which to infer a plan or arrangement which deliberately or recklessly disregards the rights of others and which is entered into by the defendant.